Argued January 17; affirmed February 27, 1940

## HISEY v. STATE INDUSTRIAL ACCIDENT COMMISSION

(99 P. (2d) 475)

Department 1.

*H. Lawrence Lister*, Assistant Attorney General (I. H. Van Winkle, Attorney General, and Oliver Crowther and C. S. Emmons, Assistant Attorneys General, on the brief), for appellant.

*Victor R. Griggs*, of Portland (Gunther F. Krause, of Portland, on the brief), for respondent.

BEAN, J. Plaintiff sustained a personal injury by accident arising out of and in the course of his employment, by violent or external means, on September 17, 1936, while in the employ of the Carlton Manufacturing Company. Both said corporation and plaintiff were subject to the workmen's compensation law. The accident occurred about as follows: While working as a boom man, cranking a stationary gas engine used in connection with a dragsaw in a sawmill operation, said engine backfired, causing the plaintiff to be thrown down on his knees, wrenching his back and spraining both sacroiliac joints.

Within the time allowed by law the plaintiff filed with defendant a proper report of said accident and claim for compensation for his injury. The claim was allowed and plaintiff was paid compensation for temporary total disability from the date of the accident until March 25, 1938. On March 30, 1938, defendant made and entered its final order whereby plaintiff's claim for temporary total disability was terminated as of March 25, 1938, and plaintiff was awarded compensation for permanent partial disability arising out of said accident equivalent to twenty-two degrees, or twenty-five per cent of the loss of function of a leg, in the sum of $550.

Plaintiff alleges that subsequent to the March award, or arrangement of compensation, there had been an aggravation of the disability resulting from said accidental injury in that whereas, on March 30, 1938, plaintiff was able to perform some light work, his condition became progressively worse so that he is now unable to perform any work at any gainful occupation; that he is unable to walk or drive a car except for short distances; that he can bend only with

great difficulty; that he has a continuous pain in the lower back and sacroiliac regions, even while sitting still or lying in bed, and that he can sleep only two or three hours at night on account of said pain, "and that by reason of the said aggravation, the disability now suffered by plaintiff is the direct and proximate result of said accidental injury and said aggravation constitutes a permanent total disability, or, if not total, an injury known in surgery as a permanent partial disability equivalent to 100 per cent of the loss of function of an arm."

The allegations of the complaint were put in issue by the answer. At the close of plaintiff's testimony defendant moved for a judgment of involuntary nonsuit, and at the close of all the testimony it requested the court to find a verdict in favor of defendant and against the plaintiff.

Plaintiff was totally disabled for a period of eighteen months and six days as a result of the injury sustained by him on September 17, 1936, during most of which time he was under treatment.

We find the testimony shows the facts to be about as follows: He had continual pain in his hip and could not hold himself erect without causing pain in his back. On November 17, 1936, two months after the accident, he was sent to the Good Samaritan Hospital in Portland, where he was confined to his bed for eight or nine weeks, during which time he was under the care of the National Hospital Association until shortly before his case was closed on March 24, 1938. During all of this time he was unable to do any work. After the closing of his case by final order of March 30, 1938, plaintiff was advised by the commission's doctors to seek light employment. He attempted to follow this

advice, but was unable to obtain such employment in Portland, where he was then living, although he felt that he was able to do some kind of light work. He rented an eighteen-acre farm at Lacomb where he went to live on April 10, 1938, and did quite a bit of work making repairs around the house and barn. He did some plowing and put in a crop on four or five acres. In fact he did all the necessary work around the place. Later he put up his own crop and helped a neighbor thresh one day and another neighbor he helped one day putting up hay. He went to work in the berry fields, but his back began hurting and he had to quit. He then went back to the commission's doctors without results. Thereafter his wife gave him some heat treatments and back massage. In August a small mill started operations in that vicinity and he went to work at this mill, which was not as hard work as that which he had been accustomed to before his accident. It was light work, but it caused his back to get worse and he laid off a few days. After that he went back to work at the mill, doing work that did not require heavy lifting and he worked until the mill closed down, about September 20, 1938. Next he started to cut pulpwood. This caused his back to become worse and he was compelled to lay off. He then went back to work thinking that his muscles were sore only because he had not used them for a long time, and after working one day he was compelled to give up this work altogether. Thereafter plaintiff did nothing more than attempt to do the work on his place. At the time of the trial he was living on this place. He had two cows, about one hundred young chickens, half a dozen old hens and a hog. His condition had gradually become worse, so at that time he was unable to do the work around the

place. No plowing was done in the spring of 1939 and plaintiff states that he could not plow. He did the milking only when his back would permit and often his wife had to finish the milking of the second cow. His daughter had to carry in the wood because much of the time he was unable to stoop over and pick up an armful of wood. As to his condition during the few months previous to the trial, he testified:

"Q. When you worked did that seem to work the pain out or make it better or worse?

A. It made it worse. I went back and tried to work the pain out, I thought it was muscle soreness. I thought if I kept on working possibly it would sweat out but it didn't, it got worse."

■ One claiming additional compensation by reason of aggravation must prove that his disability became worse or aggravated subsequent to the last award of compensation. § 49-1836, subd. (c), Oregon Code Supplement, 1935.

■ It is a well-known rule that there must be substantial evidence to support a verdict. We use the word "substantial" to distinguish from scintilla of evidence. See *Smith v. State Industrial Accident Commission*, 144 Or. 480, 23 P. (2d) 904, 25 P. (2d) 1119; *Ylvich v. Kalafate*, 162 Or. 365, 92 P. (2d) 178.

■ The plaintiff testified that since his injury on September 17, 1936, "there never has been a time I haven't had more or less pain in my back but it gradually got worse after I went to work." The witness Ray Morgan testified as follows:

"A. He tried to repair the barn and fix the hog pen, but he has never been able to do it, somebody else helped him.

     *       *       *       *       *

Q. What would happen when he would try to do those things?

A. Eventually he would go to bed.

Q. From your observation has he been able to do more work or less work since last March, as time went on?

A. He seems to be doing less all the time.

Q. What seems to be the trouble with him as you observed him? Not what he tells you but what you can see.

A. Apparently he isn't able to do it.

Q. What have you observed is wrong, his hands or his feet or what?

A. At times when he walks he apparently stumbles along. I have seen him do that. He doesn't walk as an ordinary man should.

Q. Well, you say he has tried to work and had to quit?

A. Yes.

Q. What complaint did he have when he had to quit?

A. Oh, his back give out on him.

Q. Has that happened more than once?

A. Yes, more than once."

Plaintiff's testimony was corroborated by that of his wife, Mrs. John Hisey, and his daughter, Ruth Hisey, which was based on their observation of him in the home.

The court instructed the jury, among other things, as follows:

"When the State Industrial Accident Commission made its final award on the 30th day of March, 1938, all injury and disability that existed at that time were included therein. Plaintiff cannot recover in this case and your verdict must be in favor of the defendant and against plaintiff unless plaintiff satisfies your minds by a preponderance of testimony that his condition has become aggravated and his disability has in-

creased since the final award of March 30, 1938, and that the said increased disability, if any, resulted from the injury complained of and arose out of and in the course of his employment.''

This instruction was reiterated in substance in other instructions given by the court to the jury.

Defendant's main assignment of error is that the court committed reversible error in failing and refusing to give defendant's requested instruction No. 1, as follows: ''I instruct that you shall find your verdict in favor of the defendant and against the plaintiff.''

After carefully reading the testimony we find that it is in accordance with the statement above made. The testimony of plaintiff, corroborated to a certain extent by his witnesses, supports the allegations of the complaint.

Plaintiff was examined by Dr. Alan Welch Smith on December 5, 1938, and by Dr. Edward A. Lebold, who saw him in October, 1936, and in November, 1938. The doctors described his injuries substantially as above stated, but their testimony tended to show, somewhat contrary to the plaintiff's testimony, that plaintiff had improved since the finding on March 30, 1938. Their testimony seemed to show that it was difficult to diagnose an injury to the back and an X-ray does not show such a back injury of that type plainly.

Counsel for plaintiff submitted to Dr. Lebold a hypothetical question, calling the doctor's attention to the testimony given by plaintiff that he had spaded some ground, about twenty-five by fifteen feet, with the effect that he had to go to bed afterwards; that ''he can't milk two cows without having his wife frequently finish the milking, and that has become more frequent the last few months; that he can't whereas a year ago he could plow with a tractor, he can't do

that now. When he does much work around the place or stands on his feet his back goes back on him and he has to go to bed, those occasions becoming more frequent. Driving a car affects his back and he can't crank his car on occasions on account of his back.''

He asked the doctor if those things indicated to him that this man could go out and earn a living at some occupation that he could follow. The doctor answered:

"A. Assuming this to be true, that a man has to go to bed following that amount of work, I would say he is not able to follow his usual occupation.

Q. And is permanently totally disabled, isn't he?

A. I don't know that I would say permanently and totally, I don't believe he is at present, he may be totally disabled.

Q. Well this has existed now since September 17, 1936, 2½ years. How much longer does it have to go on until you finally admit it is permanent?

A. I have seen some injuries go several years and still have them go back to work at a gainful occupation.''

Counsel for plaintiff asked Dr. McClure the following question:

"Q. You heard me put the hypothetical question to Dr. Lebold, did you not?

A. Yes.

Q. Without repeating that question I will ask you to assume those facts are correct, and if you so assume them how would you rate this man?''

Objection was made by counsel for defendant for the reason that there was no evidence showing that this man had been doing or attempted to do any plowing, which was part of the hypothetical question, and it was explained by plaintiff's counsel:

"I didn't ask him to assume the man had been doing any plowing. As far as the hypothetical question went

it was this man's statement that he couldn't do any plowing this last spring whereas the spring before he was able to do some plowing. This is as far as the question went."

The doctor answered:

"A. Based on that question as framed by Mr. Griggs I would say the man was seriously disabled.

Q. He is what you would call permanently and totally disabled?

A. I wouldn't say necessarily permanently. I would say totally disabled so far as the present is concerned, whether it would be permanent or not, that would be a matter to be determined.

Q. At least if those facts are true he is not able at this time to go out and earn a living at any occupation he is capable of following, isn't that true?

A. Well I would say approximately permanent so far as your question is concerned.

Q. I say, he is not able to go and earn a living?

A. Based on that question, no he is not."

Defendant calls attention to the fact that the court instructed the jury as follows:

"You are instructed that an injured workman is permanently and totally disabled within the meaning of the Workmen's Compensation Law if he has a disability permanently incapacitating him from performing any work at any gainful occupation. Any gainful occupation means one which the injured workman could follow except for his disability, taking into consideration his education, training and experience. He is permanently and totally disabled if he is unable to perform such substantial part of an occupation which he could ordinarily follow that would, under ordinary conditions, permit him to earn a livelihood."

Defendant contends that under this instruction given at plaintiff's request and under plaintiff's testimony, plaintiff was permanently and totally disabled

on March 30, 1938, when the final award was entered, and he continued to be permanently and totally disabled to the time of the trial and was found permanently and totally disabled by the jury; that if plaintiff was permanently and totally disabled at the time of trial on March 27, 1939, he was permanently and totally disabled on March 25, 1938, when his temporary total disability was ended and on March 30, 1938, when the final order in his case was entered. But as we read the plaintiff's testimony, it plainly shows that there has been a change and that plaintiff's condition became worse and that he was not, at the time he applied for the additional compensation for aggravation, able to do the light work that he could before the order of March 30, 1938.

There was substantial evidence tending to support the plaintiff's allegations and to show that there was an aggravation of the original injury since the order of March 30, 1938. It seems to us that there is some difference in the manner of describing plaintiff's condition by the doctors and the description given by the lay witnesses and a chance for misunderstanding, but, however that may be, the jury was not compelled to find in conformity with the expert witnesses.

The special interrogatories submitted by the court to the jury, together with their answers, are as follows:

"No. 1. Has there been any aggravation of plaintiff's disability resulting from the accidental injuries sustained by him on September 17, 1936, since March 30, 1938?
Answer: Yes. (Yes or no).
(If your answer to No. 1 is 'no' you need not answer the following interrogatory).
No. 2. Is plaintiff permanently and totally disabled as a result of the accidental injuries sustained by him

on September 17, 1936, and the aggravation of said injury?

Answer: Yes. (Yes or no)."

The jury, in answer to the special interrogatories submitted to them by the court, found that since March 30, 1938, plaintiff had suffered an aggravation of the disability resulting from the accidental injury sustained by him on September 17, 1936, and that plaintiff is permanently and totally disabled as a result of said accidental injury and the aggravation thereof, and judgment was entered accordingly, and the judgment ordered that plaintiff's claim for additional compensation on account of aggravation be referred to the commission and that the commission enter an order allowing said claim for additional compensation on account of aggravation and award plaintiff compensation for permanent total disability as a married man with one dependent, said compensation to be paid from and after March 28, 1939.

We have noticed the several assignments of error and the arguments of counsel in regard thereto and have carefully read all of the instructions of the court. We think the case was fairly submitted to the jury.

Finding no reversible error the judgment of the circuit court is affirmed.

RAND, C. J., and ROSSMAN and KELLY, JJ., concur.