BENTLEY, *Respondent,*
*v.*
STATE ACCIDENT INSURANCE FUND,
*Petitioner.*
(No. 76-5766, CA 9877)

590 P2d 746

[ 474 ]

Quintin B. Estell, Associate Counsel, State Accident Insurance Fund, Salem, argued the cause for petitioner. With him on the briefs were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Salem.

Raymond J. Conboy, Portland, argued the cause for respondent. With him on the briefs was Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and Clifford A. Allison, Chief Counsel, Workers' Compensation Division, Department of Justice, Salem, filed a brief amicus curiae for Workers' Compensation Board.

Ridgway K. Foley, Jr., and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland, filed a brief amicus curiae.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

RICHARDSON, J.

## RICHARDSON, J.

The State Accident Insurance Fund (Fund) appeals an order of the Workers' Compensation Board (Board) affirming the referee's decision that claimant's 1972 award of unscheduled permanent total disability should not be changed. The Fund contends claimant's condition has materially improved and her award should be reduced to 35 percent permanent partial disability. The Fund also contends the referee and Board erred in concluding that the Fund had followed the incorrect procedure in seeking reduction of claimant's disability award and that the award of attorney fees was improper.

Claimant, then 47 years old, suffered a compensable injury while lifting a patient in the nursing home where she worked. Her doctor treated the injury conservatively at first but when her symptoms of pain persisted he performed a myelogram and subsequently a laminectomy and excision of a ruptured disc.

Following surgery she still experienced pain associated with her back and was referred to the Physical Rehabilitation Center for intensive back exercise and physical therapy. A psychologist at the center evaluated her as a person who was functionally illiterate and below average intelligence. He concluded she had limited intellectual, verbal and manual skills and her prognosis for vocational retraining was poor. She had followed the same occupation as a nurse's aide for the past 30 years and had developed no other marketable skills. Attempts at vocational retraining proved unsuccessful.

Her claim was closed by the Closing and Evaluation Division[1] in 1972 with an award of 15 percent unscheduled disability. She appealed and the hearings referee found her to be permanently and totally disabled. The Fund did not appeal this decision. The

---

[1] Now the Evaluation Division, ORS 656.268. We discuss the statutory scheme as it existed at the time of the hearing involved in this appeal.

referee's decision was based in large measure on claimant's severely limited intellectual and manual skills and the fact she was unable, because of pain in her back, to do any lifting.

There was no further activity respecting her claim until 1976 when she requested authorization for chiropractic treatment. In response to this request the Fund sent her to Orthopedic Consultants with a request they submit an opinion on certain questions:

"* * * 1. Is there any causal relationship existing between the claimant's present complaints and her injury of September 8, 1970. 2. If related, is any further treatment recommended. 3. If not, is the claimant permanently and totally disabled as a direct result of her injury at this time. 4. If not, please evaluate any impairment existing as a result of the injury."

The report of Orthopedic Consultants contained a diagnosis respecting claimant's physical injury which was essentially the same as the diagnosis submitted in the 1972 hearing. They concluded chiropractic treatment would be of little benefit. Respecting her employability the report continued:

"We feel that this woman is capable of doing sedentary to light activities. She could be a sales woman, do clerk work, cashier work, etc., that do not tax her back. She states that actually being on her feet and walking is helpful. It is our opinion that this woman does not represent a permanent total disability case, secondary to her injury."

Based on this report the Fund sought redetermination of claimant's disability from the Closing and Evaluation Division. This division issued a redetermination order terminating claimant's permanent total disability benefits and awarding her 112 degrees for 35 percent unscheduled disability. Claimant appealed. The referee concluded she was still permanently and totally disabled and reversed the redetermination order. In addition, the referee awarded claimant $500 attorney fees. In his opinion and order the referee said he was "troubled" by the procedure utilized by the

Fund in seeking redetermination from the Closing and Evaluation Division rather than requesting a hearing.

The Board affirmed the referee including the comments respecting the procedure used. The Board awarded claimant $100 attorney fees for services in connection with the appeal to the Board.

We first approach the Fund's claim that the referee and Board erred in concluding an improper procedure had been followed. We first note this case does not involve an exercise of the Board's own motion jurisdiction under ORS 656.278. The question is what rights does an employer or insurer have to seek redetermination of an award after the appeal time has expired. ORS 656.325(3) provides:

> "A worker who has received an award for unscheduled permanent total or unscheduled partial disability should be encouraged to make a reasonable effort to reduce his disability; and his award shall be subject to periodic examination and adjustment in conformity with ORS 656.268."

ORS 656.268 provides an employer or insurer is to submit medical reports to the Closing and Evaluation Division to seek determination of an award. Reading these two statutes together we conclude an employer or insurer may seek redetermination of an award from the Closing and Evaluation Division when there is available medical or other evidence that the injured worker's condition has improved. The thrust of ORS 656.325(3) is that a worker's compensation should be reduced in the event his disability has reduced. This procedure does not, however, allow a reduction in the award unless there has been a decrease in disability. It is not simply an additional appeal right from the original award. The Fund followed the proper procedure by seeking redetermination of claimant's disability from the Closing and Evaluation Division. Since the injured worker has a continuing obligation to reduce his disability and the award is subject to periodic examination and adjustment there is no time

[ 477 ]

limit on the insurer's or employer's right to seek reduction of the award based on improvement in the worker's condition. If the appeal period following an award has not run the Fund may seek a hearing pursuant to ORS 656.283 and 656.319(2). If the appeal time has run there is no right of the Fund to request a hearing and it must proceed under ORS 656.325 by seeking redetermination of the award.

The threshold issues in resolving this case are; what must be established for an adjustment of the previously granted award and where the burden of proof lies. The referee placed the burden of proof on claimant apparently because she was appealing a determination order from the Closing and Evaluation Division.

In an unscheduled disability case, the degree of disability is measured by the loss of earning power, which is a combination of physical and mental disability and employability in the current job market. *Ryf v. Hoffman Construction Co.,* 254 Or 624, 459 P2d 991 (1969); *Surratt v. Gunderson Bros.,* 259 Or 65, 485 P2d 410 (1971). It follows, in order to reduce the disability award, there must be a material change since the last award in one of the physical or mental factors that relate to claimant's earning capacity.

The worker seeking a permanent total disability award has the burden of proving that status in the first instance. ORS 656.206(3). The Act says nothing respecting the burden of proof for a downward adjustment of the award. We think if either the employer or insurer seeks a reduction in the award based upon an improvement of the worker's earning capacity it must establish the necessary change. It is not sufficient to allege a change in conditions and thereby shift the burden of proof to the claimant to establish a lack of change.

We conclude, as did the referee and the Board, that there was no material change in claimant's medical

and mental condition respecting her earning capacity. The report from Orthopedic Consultants disclosed little change in her physical condition and her ability to do the lifting incident to the only employment she knew as a nursing home aide. There was no current psychological evaluation to indicate any improvement in her intellectual, verbal or manual skills. The conclusion by Orthopedic Consultants that she could be a clerk, a cashier, "etc" apparently ignored her severe intellectual and manual limitations.

Claimant testified at the hearing that she felt a little better than she did in 1972 but she still was unable to do any lifting. She testified she does light housework with the assistance of her husband and goes fishing and camping with him. The Fund argues that claimant's ability to do the work necessary to maintain a large home shows she is working full time in a suitable occupation. If, the Fund contends, she were doing housework for someone else it would be a gainful occupation. She testified she is unable to do lifting, or wash windows and is able to scrub floors for only a short period of time because of back pain. The light housekeeping chores that she is able to do would be far less than required of a housekeeper for hire.

The final contention of the Fund is that it was error to award attorney fees when there is no stipulation or evidence claimant's attorney had rendered any service. Claimant concedes that there was no evidence or stipulation respecting attorney fees, but argues the Fund did not make its objection known to the Board and thus the issue is not preserved for appeal.

■■ Normally appellate courts require a litigant to make known his objection in the lower tribunal in order to urge the objection on appeal. The purpose of this rule is to allow the tribunal to correct any error and obviate the necessity of reversal and remand for additional proceedings. A litigant must have an adequate opportunity to object and the tribunal an opportunity to correct any error. In this case, the Board, in

response to the Fund's request for review of the referee's decision, reviewed the record and issued its decision including the award of attorney fees. There was no additional evidence received and no appearance by either party. The Fund had no opportunity to object to attorney fees. The statute, ORS 656.298, provides any party affected by the Board's order may appeal directly to this court. Objections to the final order of the Board are made through the appellate process. We conclude that the award of attorney fees by the Board may be contested on appeal to this court without an objection to the Board.

◼ In *Reeves v. Sierra Homes,* 29 Or App 441, 563 P2d 1242 (1977), we held an award of attorney fees is reviewable for abuse of discretion. Without a stipulation or evidence of services rendered and their value, we could not measure the discretion exercised. On further reflection we conclude the holding of *Reeves* respecting attorney fees was in error and to the extent it requires evidence or a stipulation before the referee or Board may award attorney fees, it is overruled. While each workers' compensation case before the referee or Board may present unique questions of fact or law the method of handling these cases tends to fit into a common pattern. The referee and Board, handling this type of case exclusively, are aware of the average amount of work demanded by the average claim. This gives them a certain expertise in determining a proper attorney fee in the average case. The holding of *Reeves* imposes an unnecessary requirement of additional paper work and additional attorney's time which generates additional fees.

◼ ORS 656.388(2) sets forth a procedure whereby an attorney dissatisfied with the award of fees may submit the controversy to the circuit court for resolution. In this summary proceeding, written statements of the services rendered are submitted by the attorney and the referee or Board. The circuit court then has a factual basis for resolving the dispute. There appears

to be no reason why such evidence should be submitted to the referee or Board before a dispute arises. This procedure is available whether the attorney fee is to be paid by the insurer or from the claimant's compensation award.

We are advised by the supplemental brief of the claimant and the amicus curiae brief of the Attorney General that the referees and the Board have for many years awarded attorney fees without evidence or a stipulation. The paucity of appeals to this court concerning attorney fee awards leads to the conclusion this procedure has been satisfactory.

We conclude it is unnecessary for the claimant to present evidence of the extent and value of legal services rendered in order for the Board or referee to set a reasonable attorney fee. This does not prevent an attorney who has rendered extraordinary services from filing an appropriate affidavit or other proof of these services with the administrative agency to seek extraordinary fees.

The award of attorney fees is reviewable by this court. On review we have the record made before the referee and the Board, which is, in most cases, adequate to review the discretion exercised in awarding attorney fees. We give deference to the administrative agency's expertise in terms of its awareness by experience of the normal amount of work necessary to represent a claimant. We will alter the award only in case of a manifest abuse of discretion.

In this case the referee awarded claimant $500 attorney fees to be paid by the Fund. That award is not contested in this appeal. The Board ordered the Fund to pay claimant's attorney an additional $100 for his services in connection with the Board's review of the referee's order. The Fund argues and the claimant's attorney concedes that no legal services were in fact performed. The Board, in response to the Fund's appeal, reviewed the record made before the referee.

[ 481 ]

No briefs were filed and no additional evidence was presented to the Board. The basis of an award of attorney fees is to partially compensate claimant for the expense of obtaining compensation for an injury. If no services are performed by his counsel in his behalf then no fees are justified. It was an abuse of discretion to award any fees in connection with the Board's review. The portion of the order awarding attorney fees is reversed. The remainder of the order is affirmed.

Affirmed in part; reversed in part.