Argued and submitted November 2, 1981, reversed and
remanded with instructions March 23, 1982

In the Matter of the Compensation
of Rex Harris, Claimant,

HARRIS,
*Petitioner on Review,*
*v.*
SAIF CORPORATION,
*Respondent on Review.*

(WCB No. 79-7093, CA 19723, SC 27908)

642 P2d 1147

Cynthia L. Barrett, Portland argued the cause for petitioner. Charles Paulson, Portland, filed the brief for petitioner.

Darrell E. Bewley, Salem, filed the brief and argued the cause for respondent. With him on the brief were K. R. Maloney and James A. Blevins, Salem.

CAMPBELL, J.

## CAMPBELL, J.

Claimant Harris, who had been adjudged permanently totally disabled in 1970 as a result of a work-related accident, appealed from an order of the Workers' Compensation Board (Board) which found him no longer permanently totally disabled and prospectively reduced his disability compensation award. The Court of Appeals affirmed without opinion and claimant petitioned this court for review contending that (1) the Board had erroneously placed the burden of proof upon him to show continuance of his disability rather than upon the insurer to establish a change of circumstances warranting award modification, and (2) the Board erred in basing its finding that he was no longer permanently totally disabled upon income he had earned through real estate investments.

There is no dispute in this action that claimant was substantially disabled by a compensable on-the-job injury and that he remains disabled to some degree. The dispute centers upon the present extent of his disability and the propriety of the Board action in reducing his compensation award. For reasons set out below, we agree with the basic contentions of the claimant and reverse and remand this cause to the Board for reconsideration of its order.

In September of 1967, claimant suffered a severe job-related injury when a rock shattered the windshield of the pickup he was driving and struck him in the head. He sustained multiple skull fractures and organic brain damage and was hospitalized for two weeks after the accident. His initial complaints were memory failure, sinus difficulties, tenderness and stiffness in the neck, a deformed face, and inability to open his mouth.

At the time of the accident, claimant had had a long and stable work history, including 17 continuous years as a stock delivery driver for his employer, an oil products firm. Despite his injuries, claimant was highly motiviated to return to work. After recuperation, he was examined by doctors of the Workers' Compensation Board; the discharge committee eventually found him to be only minimally physically disabled, ineligible for vocational rehabilitation, and well enough to be released to resume his former job.

Claimant returned to his job in February 1968, but during the summer of 1969 he made serious errors at work, improperly mixing fuels, which cost his employer a considerable amount of money. The errors were apparently the result of claimant's continuing memory and attention problems. Soon after the incident, claimant was demoted. Even with a position of less responsibility, however, claimant was not able to perform satisfactorily and his employment was eventually terminated.

He was thereupon reevaluated by the Board and by a Determination Order dated June 3, 1970, he was found to be permanently totally disabled. Claimant's permanent physical impairments, though significant, were relatively minor; injury-related mental and psychological problems, however, including distractability, loss of memory, depression and anxiety adversely affected his employability in the type of positions in which he was formerly employed.

During December 1970, claimant began an extended course of psychotherapy with a psychiatrist and enrolled in Columbia Basin Community College for coursework in real estate sales. The psychiatrist's initial report was that claimant had extremely regressed following the accident and was slowly learning to cope with his disability. Therapy was discontinued in July 1972 with the doctor reporting that claimant "is going to make a satisfactory adjustment but he definitely will have some permanent, partial disability."

The next medical reports in the file, dated March 1976 and December 1977, found claimant's condition essentially unchanged over the preceding seven years, but noted that he was adjusting well to his disabilities. In late 1977 claimant started seeing his psychiatrist again in drug therapy as well as psychotherapy. In October of 1979, his psychiatrist opined that despite the therapy claimant remained totally disabled, only marginally adjusted to life, and in need of further treatment.

Notwithstanding the medical reports which continued to state that claimant's disability remained essentially unchanged since his accident, the State Accident Insurance Fund (SAIF), his insurer, requested a reevaluation and reduction in his award pursuant to ORS 656.206.

Citing the fact that claimant had become a licensed real estate agent in 1972 and had enjoyed rather high incomes in the years 1973 through 1979, SAIF argued that claimant was no longer permanently totally disabled. After investigation, the Evaluation Division of the Workers' Compensation Department agreed and recommended to the Board that claimant's permanent total disability be terminated and his compensation be reduced to 48 degrees for 15 percent unscheduled head disability. By order dated July 31, 1979, the Board concurred with the Division recommendation.

Claimant then requested a hearing to seek reinstatement of his award. *See* ORS 656.283(1), OAR 436-65-225(2). By opinion and order dated April 25, 1980, the Board referee found that claimant remained permanently and totally disabled, reversed the July 31, 1979, order reducing his disability award, and reinstated his prior permanent and total disability award. Pursuant to ORS 656.295, SAIF requested Board review alleging that claimant had not proven himself to be permanently totally disabled. After *de novo* review, the Board by order dated December 19, 1980, again revoked claimant's permanent total disability award, modified the referee determination and awarded claimant compensation equal to 240 degrees for 75 percent unscheduled disability in lieu of prior awards. It is this order from which claimant appealed.

The threshold issue to be resolved is: In a proceeding to diminish or terminate a prior disability compensation award, does the claimant have the burden of proof, to establish that his or her disability is continuing, or does the employer or insurer bear the burden to establish a change in circumstances sufficient to justify award reduction? Claimant contends that the burden should have been on SAIF in this case and that the Board had erroneously placed the burden upon him.

The record is unclear on the issue. SAIF was the initiator of this proceeding to reduce claimant's permanent total disability award; pursuant to ORS 656.206(5) it reexamined claimant's file, forwarded its results to the Workers' Compensation Department, and requested a

reevaluation and reduction of claimant's award.[1] The July 31, 1979, Board order reducing claimant's award is ambiguous regarding the burden of proof issue, concluding only that "claimant can no longer be considered permanently and totally disabled * * *." After the hearing requested by claimant, the April 15, 1980, opinion and order issued by the referee indicates only that he agreed with claimant on the merits and found it "convincing that claimant is permanently totally disabled, and has been since June 1, 1970."

In seeking Board review of the referee determination in claimant's favor, SAIF contended that "claimant had not proven he is permanently and totally disabled." The Board agreed with SAIF both on the merits and on the burden of proof issue: "After making an independent review of the record in this case, we find the claimant has lost a considerable portion of wage earning capacity, but *he has not proven* he is permanently and totally disabled." (Emphasis added.)

In his appeal to the Court of Appeals, claimant assigned this placement of the burden of proof as error, citing *Bentley v. SAIF,* 38 Or App 473, 590 P2d 746 (1979). In *Bentley* SAIF was appealing a Board refusal to reduce a permanent total disability award; it alleged that the claimant there had not proven that she remained so disabled. The Court of Appeals held:

---

[1] ORS 656.206(5) provides:

"Each insurer shall reexamine periodically each permanent total disability claim for which the insurer has current payment responsibility to determine whether the worker is currently permanently incapacitated from regularly performing work at a gainful and suitable occupation. Reexamination shall be conducted every two years or at such other more frequent interval as the director may describe. Reexamination shall include such medical examinations and reports as the insurer considers necessary or the director may require. The insurer shall forward to the director the results of each reexamination."

*See also* ORS 656.325(3), which provides:

"A worker who has received an award for unscheduled permanent total or unscheduled partial disability should be encouraged to make a reasonable effort to reduce his disability; and his award shall be subject to periodic examination and adjustment in conformity with ORS 656.268."

For the administrative rules governing reevaluation of awards under these provisions, see OAR 436-65-100 to -225.

"The worker seeking a permanent total disability award has the burden of proving that status in the first instance. ORS 656.206(3). The Act says nothing respecting the burden of proof for a downward adjustment of the award. We think if either the employer or insurer seeks a reduction in the award based upon an improvement of the worker's earning capacity it must establish the necessary change. It is not sufficient to allege a change in conditions and thereby shift the burden of proof to the claimant to establish a lack of change." 38 Or App at 478.

In its brief before the Court of Appeals, SAIF acknowledged the *Bentley* rule but argued that the evidence in the record was sufficient to uphold the Board decision on the merits; that is, SAIF contended that, even if *it* had the burden of proof, it had carried it. The Court of Appeals, in affirming without opinion or any citation, left the parties and this court without an inkling as to the rationale for its decision — did it conclude that the Board did not err in placing the burden of proof upon the claimant (thereby implicitly overruling or distinguishing *Bentley*), or did it agree with SAIF's contention and decide that, based upon its own *de novo* review of the record, SAIF had carried its burden of proof?[2]

In his petition for review here, the claimant reiterates his arguments below, but SAIF has changed its tack. Contrary to its earlier acquiescence in the *Bentley* rule, SAIF now contends that the Board was correct in placing the burden of proof upon the claimant. We accepted review in part to clarify this procedural problem.

■ It is quite clear that a disability claimant seeking, in the first instance, permanent total disability status has the burden of proving that he is so disabled, that he is willing to seek regular and gainful employment, and that he has made reasonable efforts to obtain such employment. ORS 656.206(3); OAR 436-65-700(4). As the *Bentley* quote above notes, however, there is no express statutory provision dealing with burden of proof in award adjustment proceedings. Although the Board has the authority to adopt

---

[2] The concerns we expressed in *Gettman v. SAIF,* 289 Or 609, 612-613, 615-616 (Linde, J., specially concurring), 616 P2d 473 (1980), *Rogers v. SAIF,* 289 Or 633, 616 P2d 485 (1980), and *Grable v. Weyerhaeuser Co.,* 291 Or 387, 391 (n 4), 631 P2d 768 (1981), are apropos here.

procedural rules to govern its consideration of claims (ORS 656.704(1); OAR 436-83-010), it has adopted no rules on the subject. *Bentley,* moreover, is the only Oregon case on point.

■     Thus, the resolution of this issue will turn upon traditional notions of burden of proof. The general rule is that the burden of proof is upon the proponent of a fact or position, the party who would be unsuccessful if no evidence were introduced on either side. *See,* Oregon Evidence Code Rules 305-307 (replacing ORS 41.210); ORS 183.450(2).[3]

■ ■     Where modification or termination of an award is sought upon the ground that there has been a significant change in claimant's condition since the grant of the original award, it is generally held that the burden to allege and prove the requisite change should be upon the party requesting the modification. 3 Larson, Workmen's Compensation Law 15-523, § 81.33 (1976); Note, Burden of Proof in Proceedings to Modify Workmen's Compensation Agreements, 75 Dickenson L. Rev. 352 (1971). Where a party to a disability compensation award seeks to have the award modified or terminated, it is generally necessary to establish a change of circumstances sufficient to warrant the relief sought. *See Gettman v. SAIF,* 289 Or 609, 614, 616 P2d 473 (1980); *Bentley v. SAIF, supra,* 38 Or App at 478; 3 Larson, *supra* at §§ 81.20-81.33. Thus, where the insurer or employer seeks to reduce or terminate a claimant's disability compensation award, it is incumbent upon it to establish sufficient change of circumstances. *Bentley v. SAIF, supra.* Conversely, where the claimant seeks to have his or her award increased, the claimant has the burden of

---

[3] Where the Workers' Compensation Act does not provide for a procedure for administrative review of actions or orders of the department or SAIF, the relevant provisions of the Oregon Administrative Procedure Act (ORS 183.310 to 183.500) are applicable. ORS 656.704(1); OAR 436-83-010. ORS 183.450(2) provides that "[t]he burden of presenting evidence to support a fact or position in a contested case rests on the proponent of the fact or position."

To the extent that there is ambiguity regarding the burden of proof placement, not only is there a well-established general rule of liberal constuction vis-a-vis the Workers' Compensation Act in favor of injured workers and compensation *(see Fossum v. SAIF,* 289 Or 777, 782-783, 619 P2d 233 (1980)), but also the department's administrative procedural rules are expressly required to be liberally construed in their favor. OAR 436-83-020.

proof. *See Hisey v. State Indus. Acc. Commn.*, 163 Or 696, 700, 99 P2d 475 (1940); *Fisher v. Consolidated Freightways, Inc.*, 12 Or App 417, 507 P2d 53 (1973).

SAIF argues, for the first time before this court, that because of the procedure set out in the statutes for Board reevaluation of awards, the rule should be different. SAIF's argument is as follows:[4] ORS 656.206(5) requires employers or insurers to periodically reexamine permanent total disability cases and to forward the results of such reexamination to the department. The Evaluation Division then reevaluates the claim to see if an award modification is justified. If the division determines that the award should be changed, the recommendation is sent on to the Board. If the Board concurs, it will issue an order modifying the award. The aggrieved party may then demand a hearing on the modification; in the absence of a timely hearing request, however, the order becomes final. If the award is reduced or terminated, the claimant has the right to demand a hearing before a referee and seek reinstatement of the original award. SAIF argues that since the claimant at such a hearing is seeking to overturn a Board order, the burden of proof should be upon him or her to establish that the extent of disability is greater than the order recognizes.

This argument misconstrues the nature of the procedural process. The claimant in the post-modification hearing is not in the same posture as an initial claimant — such a claimant has had his or her prior final award unilaterally modified by the Board and is challenging the propriety of that action. The post-modification hearing is not strictly an "appeal" from the modification order, but rather a substitution for a pre-modification hearing. The Board's action in unilaterally modifying a claimant's award without a prior hearing does not serve to *ipso facto* shift the burden from the insurer/employer (to establish sufficient change in claimant's condition) to the claimant (to establish that his or her condition is worse than the modification order recognizes). Where the Board unilaterally modifies a prior award and the aggrieved party

---

[4] *See generally* ORS 656.206(5), 656.268 -. 298, 656.-.319 -. 325; OAR 436-65-100 to - 225, 436-83-810; 38 Op AG 2069, 2074-2077 (1978).

demands a hearing, the cause is heard *de novo* before the referee and the issue to be decided is whether there has been a sufficient change in claimant's condition to justify the modification. Thus in the award adjustment proceeding the burden of proof is upon the party alleging change in condition and not necessarily upon the party who demanded the hearing. In the case at bar, it is evident that the Board placed the burden of proof upon claimant despite the fact that SAIF was the party alleging a change in circumstances and seeking a modification of the award. We hold this to have been error.

Our decision that the Board had erroneously placed the burden of proof upon claimant does not resolve this case. The Court of Appeals decision affirming the Board's action may have been based upon its *de novo* review of the evidence and a finding for SAIF on the facts. Thus, the second issue to be resolved is whether there was sufficient evidence to justify the diminution of claimant's award.[5]

■ Claimant contends that the Board based its determination that he was no longer permanently totally disabled on earnings he had made through real estate investments and that such "passive" income should be deemed irrelevant to a disability determination. It is his position that a mere finding that he is capable of earning money is not sufficient in and of itself to justify revocation of his permanent total disability status; he argues that such an action can be based "only upon a specific finding that the claimant presently is able to perform a gainful and suitable occupation." *See Gettman v. SAIF, supra,* 289 Or at 614; ORS 656.206(1)(a). SAIF contends that the evidence in the record and the findings below are sufficient to justify the Board's action.

---

[5] The Court of Appeals reviews Board orders de novo on the facts. ORS 656.298. This court, on the other hand, reviews only for errors of law; we do not review the evidence independently, but will rely upon the findings of fact below. *Sahnow v. Fireman's Fund Ins. Co.,* 260 Or 564, 491 P2d 997 (1971). Inasmuch as the Court of Appeals did not issue any written findings of fact, we must use those of the Board and referee, and the undisputed facts appearing in the record. In essence, we must determine whether these findings and facts would have been sufficient to allow the Court of Appeals, on its *de novo* review, to properly affirm the Board's order.

The evidence in the record is largely undisputed and shows that, despite his disabilities, claimant has been able over the past several years to earn a considerable amount of money. Soon after completing his coursework in real estate sales at the community college and obtaining a real estate agent's license in 1972, claimant invested in a large tract of land for subdivision. To finance his investment he borrowed $70,000 from an acquaintance, cashed in $14,000 in stock benefits obtained through his former employer, and withdrew $8,000 from his savings. In addition to the return on his investment in the tract, claimant was to receive a portion of the broker's fee on each lot sold. Although claimant has been "hired" by a real estate agency as a result of this investment, he receives neither a salary from the firm nor any portion of its income other than the commissions from sales within the subdivision. Besides his subdivision investment, claimant has also purchased several mobile home lots and rental homes, which he manages and from which he receives rental income.

There is evidence in the record to suggest that claimant has been relatively active in the subdivision's development. He testified before the referee that he decided which prospective builders could build and where and that he showed homes, wrote up earnest money agreements, advised on financing, and otherwise dealt with the builders. In addition, there is evidence that claimant advised his investment partner in other financial dealings. As a result of sales within the subdivision between the years 1973 and 1979,[6] claimant reported earnings ranging from $9,000 in 1974 to $55,000 in 1978.[7] This is not to say, however, that claimant is working regularly; the record indicates that because of his mental, physical, and psychological problems his work schedule has been inconsistent and variable.

---

[6] Due to sewer permit problems, sales within the subdivision ceased in 1979 and have not resumed. There is no evidence that claimant has received any income since 1979 from his real estate activities or otherwise.

[7] Claimant's income for those years is as follows: $11,019 in 1973; $9,242 in 1974; 1975's figures are missing; $22,228 in 1976; $23,499 in 1977; $55,366 in 1978; and $25,197 in 1979. Claimant's income tax statements are not in the record and there is no indication whether these figures are gross or net income, or whether they include income from other sources, such as his wife and family.

The referee, after hearing the testimony and reviewing the evidence, concluded:

" * * * It is undeniable that claimant, especially in 1978, enjoyed a rather high income. Income is not the criteria [sic] in determining unscheduled disability. Earning capacity is the measure. The evidence is convincing that claimant has not been able to earn anything since early 1979 and that his income is really not earnings. It is the result of investments claimant made when he found he no longer could work at Standard Oil. * * * But even if subdivision sales had not come to a halt it is doubtful that claimant, in his present state of recovery, is capable of making a living selling real estate or in any other capacity."

On review the Board concluded:

"After de novo review, we do not find that claimant is permanently and totally disabled. The evidence establishes the claimant is capable of doing many things and is very active. Also the evidence establishes the claimant, through investment and real estate transactions, has been able to earn money. His ability to do so can be considered in determining his loss of wage earning capacity. After making an independent review of the record in this case, we find the claimant has lost a considerable portion of wage earning capacity, but he has not proven he is permanently and totally disabled."

As the referee correctly noted, income is not the criterion for determining whether a claimant is permanently totally disabled. A severely injured and incapacitated worker, to take an extreme example, who is able to "earn" a living through income received from bank deposit interest, trust distributions, or stock dividends is nonetheless disabled, despite the fact that this income may exceed to a considerable extent the wage he earned at his former job prior to his disabling injury. In *Gettman v. SAIF, supra,* we set out the relevant test for adjusting permanent total disability awards:

"* * *[A] permanent total disability award is based upon existing occupational abilities. That award can be adjusted if the claimant is no longer permanently incapacitated from regularly performing work at a gainful and suitable occupation." 289 Or at 615.

*See also* ORS 656.206(1)(a) which defines "permanent total disability" as:

> " * * * the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the workers from regularly performing work at a gainful and suitable occupation. As used in this section, a suitable occupation is one which the worker has the ability and the training or experience to perform, or an occupation which the worker is able to perform after rehabilitation."

■ The determination of permanent total disability status does not turn upon whether the claimant has money-earning capacity, but rather upon whether the claimant is currently employable or able to sell his services on a regular basis in a hypothetically normal labor market. *See Bentley v. SAIF, supra,* 38 Or App at 478; *Wilson v. Weyerhaeuser Co.,* 30 Or App 403, 408-409, 567 P2d 567 (1977); OAR 436-65-700(5); 2 Larson *supra,* § 57.21 at 10-101 to 10-102. In discussing the "odd-lot" doctrine,[8] Larson notes:

> " 'Total disability' in compensation law is not to be interpreted literally as utter and abject helplessness. Evidence that claimant has been able to earn occasional wages or perform certain kinds of gainful work does not necessarily rule out a finding of total disability nor require that it be reduced to partial. The task is to phrase a rule delimiting the amount and character of work a man can be able to do without forfeiting his totally disabled status. * * *
>
> " * * *
>
> "The essence of the test is the probable dependability with which claimant can sell his services in a competitive labor market, undistorted by such factors as business booms, sympathy of a particular employer or friends, temporary good luck, or the superhuman efforts of the claimant to rise above his crippling handicaps." *Id.* at 57.51, 10-164.21 to 10-164.49." Footnotes omitted).

The fact that a claimant may have an income, even a substantial one, or that he or she is able to perform a variety of activities does not mean *ipso facto* that he or she

---

[8] *See generally Wilson v. Weyerhaeuser Co.,* 30 Or App 403, 567 P2d 567 (1977); *Mansfield v. Caplener Bros.,* 10 Or App 545, 500 P2d 1221 (1972); Skelton, Workmen's Compensation in Oregon: Ten Years After, 12 Will. L. J. 1, 30-34 (1975).

is no longer permanently totally disabled.[9] As we expressly held in *Gettman,*

> "* * * whether this claimant is permanently totally disabled must be decided upon conditions existing at the time of decision, and his award of compensation for permanent total disability can be reduced *only upon a specific finding that the claimant presently is able to perform a gainful and suitable occupation.*" 289 Or at 614 (emphasis added.)

There is no such specific finding in this case. In rejecting the referee's finding that claimant remained permanently and totally disabled, the Board merely concluded that claimant "is very active" and "has been able to earn money." There was no finding that claimant is currently employable in any recognized labor market or that he is presently able to regularly perform any gainful and suitable occupation. A severely disabled worker who through luck or pluck is able to generate an income cannot be denied permanent total disability status simply because he or she has demonstrated an ability to "earn money." The claimant's ability to work, not his or her financial situation is the criterion for disability compensation.

■ ■ This is not to say, of course, that investment or self-generated income is irrelevant to a disability determination or that employability only in the manual labor, 9-to-5 job market may be considered. An injured worker capable of earning a significant income through mental labor alone on a regular basis may be found to be non-permanently totally disabled despite severe physical handicaps. Claimant suggests a "passive" vs. "active" dichotomy with regard to income, making the latter but not the former relevant to a disability determination. Although the suggestion is not without appeal, we need only to reiterate our *Gettman* holding that a claimant's permanent total disability award can only be revoked or diminished upon a specific and express finding that he or she is presently able to regularly

---

[9] *See Hill v. U.S. Plywood Champion Co.,* 12 Or App 1, 503 P2d 728 (1972), *rev den* (1973) (claimant permanently totally disabled even though has some income from fishing and cattle raising). *See also Hoffmeister v. State Indus. Acc. Comm.,* 176 Or 216, 222-223, 156 P2d 834 (1945), where this court, under a somewhat different statutory scheme, held that a claimant's disability award could only be modified where there was found to be a significant change in his or her physical condition and that economic changes were irrelevant.

perform a gainful and suitable occupation and further note that a claimant's ability to generate income is only relevant insofar as it tends to establish his or her employability at some such occupation. A claimant's demonstrated ability to earn money is, in and of itself, insufficient.

Since we are unable to ascertain on this record whether the Board or the Court of Appeals applied the correct rule of law and whether they would have reached the same result, in their fact-finding function, under the analysis set out above, the matter must be remanded to the Board to reconsider the evidence in light of this opinion. *Inkley v. Forest Fiber Products Co.*, 288 Or 337, 345-346, 605 P2d 1175 (1980).

Reversed and remanded to the Court of Appeals with instructions to remand to the Workers' Compensation Board.