Argued May 25, reversed June 14, reconsideration denied July 14, petition for review denied September 1, 1976

HILL, *Respondent,*
*v.*
STATE ACCIDENT INSURANCE FUND,
*Appellant.*
(No. 76-01-00204, CA 6033)
550 P2d 752

*Kevin L. Mannix,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Thomas O. Carter,* Portland, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Langtry and Lee, Judges.

LANGTRY, J.

**LANGTRY, J.**

State Accident Insurance Fund appeals from a circuit court order awarding claimant permanent total disability for a back injury suffered in 1974, the last in a succession of such injuries to this claimant. Closing and Evaluation Division of the Board, referee and Workmen's Compensation Board had successively awarded 144 degrees for 45 percent unscheduled disability. SAIF concedes that 80 degrees instead of 144 degrees should be allowed.

The history and status of the case is described in the Board's opinion on review.

"* * * * *

"Claimant has a history of low back injuries; he had received 20% of the maximum for an injury suffered on August 9, 1963, and 15% of the maximum for an injury suffered on April 9, 1966.

"On February 12, 1971 claimant wrenched his low back. An exploratory right laminectomy L4-5 indicated no extruded disc but revealed a tight nerve root in the foramina and a foraminotomy was performed. Claimant's claim was closed with an award of 160° for 50% of a maximum of 320° on March 13, 1973. Claimant appealed; however, the award was affirmed by the Hearing officer, the Board and the Circuit Court.

"In March 1974 claimant suffered an exacerbation of his low back symptoms while working and in June 1974 he aggravated his low back while washing his car. Dr. Eckhardt, who had treated claimant for his back injury since 1966, requested that the claim be reopened for conservative care of his present disability and the Fund reopened the claim effective June 11, 1974. On August 22, 1974 claimant's attorney wrote the Fund requesting the claimant be awarded permanent total disability benefits; the Fund notified claimant's attorney that the claim was being resubmitted to the Board for a determination of further impairment. On November 19, 1974 the claim was closed by the Board with the Second Determination Order which awarded 144° for 45% unscheduled disability.

"* * * * *"

[ 699 ]

Thus, with the most recent Board award, since 1963 claimant had been awarded 130 percent for unscheduled permanent disability to his low back; but he was seeking, and the circuit court awarded, permanent total disability.

Claimant is now 42 years old, and after the 1971 injury he had retrained as a barber, which vocation he was engaged in at the time of the 1974 injury.

Dr. Arthur L. Eckhardt, the orthopedic physician who had treated claimant since 1966, testified that he is of the opinion that claimant is so impaired as to be unable to work. In May 1975, after seeing claimant in April 1975, he testified:

"* * * [I]f you want to compare recent times, the past few months to a year or more, functionally he's able to do less. He seems to have more discomfort, more symptoms from less exercise, minor trauma which we see and requires more treatment, medication.

"* * * * *

"He's just getting worse.

"* * * * *

"* * * [H]is general physical activities are extremely limited. He can't sit for a long time. He can't stand for a long time. He can't walk for a long time. Practically any bending or lifting, even if it's just bending without picking anything heavy up, will often bring on a muscle spasm in his back. He's continued to try to barber a little bit. He's down now—I think he told me the last time or so before when I saw him he was just down to maybe a couple hours a day when a year and a half ago he was working three and four days a week."

Mr. Lester Norman, a vocational rehabilitation counselor who had guided claimant through barber training, testified:

"Q * * * Mr. Norman, a person in Mr. Hill's position and his background—you're familiar with his background—is there any regular employment in any recognized branch of the labor market that Mr. Hill can be employed by?

"A I cannot think of any, no.

[ 700 ]

"Q Barbering was just almost a last resort was it not?

"A Correct."

Mr. Norman's testimony also brought out that claimant is a "functional illiterate." Claimant did testify that he is still regularly employed part time every working day as a barber. For barbering in 1974 claimant testified he earned $870, and at the time of the hearing in May 1975 he had already earned in 1975 "in the neighborhood, I imagine, of $500." He pays 25 percent of the income he makes from regular customers to the shop proprietor, and keeps 75 percent.

As counsel for claimant suggests, this case is remarkably similar on the facts about claimant's disability to *Seaberry v. SAIF*, 19 Or App 676, 528 P2d 1103 (1974). But in *Seaberry,* we said:

> "We find that claimant is permanently and totally disabled under the 'odd-lot' doctrine. While he is not altogether incapacitated, he is nevertheless so handicapped that *he is not able to obtain regular employment in any recognized branch of the labor market. Deaton v. SAIF,* 13 Or App 298, 509 P2d 1215 (1973). Claimant can no longer perform the heavy manual labor he has done for most of his life; *nor can he continue in the trade of barbering, for which he retrained* * * *." (Emphasis supplied.) 19 Or App at 682.

This quotation points up the one essential difference at bar with *Seaberry.* Claimant's own testimony shows that he works part time every day at barbering, and at the time of the hearing his earnings were coming in at a greater rate than for the previous year. This is inconsistent with the other of claimant's evidence. We think the evidence as a whole justifies the full award that was made by the referee and the Board, but not more. While claimant may become a permanent and total disability case, in conformance with the predictions of his physician and vocational counselor, the evidence did not demonstrate that such an eventuality had yet arrived.

Reversed.