Argued and submitted October 11, 1982, affirmed in part, reversed in part and remanded July 6, reconsideration allowed November 30, 1983, former opinion (65 Or App 801, 672 P2d 70) adhered to

In the Matter of the Compensation of
William J. Frame, Claimant.

**FRAME,**
*Petitioner - Cross-Respondent,*

*v.*

**CROWN ZELLERBACH,**
*Respondent - Cross-Petitioner.*

(WCB Case 80-07617; CA A24057)

665 P2d 879

Robert K. Udziela, Portland, argued the cause for petitioner - cross-respondent. With him on the brief was Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

J. P. Graff, Portland, argued the cause for respondent - cross-petitioner. On the brief were Ridgway K. Foley, Jr., P.C.,

and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Claimant appeals from an order of the Workers' Compensation Board denying authorization for a program of rehabilitation. Employer cross-appeals from the Board's order awarding claimant 40 percent permanent partial disability. We affirm the Board's order of permanent partial disability and reverse as to the program of rehabilitation.

Claimant was working on the green chain at Crown Zellerbach on August 2, 1978, when he slipped and fell, injuring his back. A determination order was issued in 1978 awarding time loss but no permanent partial disability. Claimant returned to work and, in February, 1979, reinjured his back. Following surgery, he again returned to work but suffered a recurrence of his symptoms. His doctor suggested a change in occupation. In March, 1980, claimant was released for work which did not require repetitive heavy lifting or bending. In June, 1980, he was examined at Orthopaedic Consultants, which found him to be medically stationary and in need of vocational assistance. In July, 1980, a determination order issued awarding 20 percent unscheduled low back disability.

In June, 1980, a vocational rehabilitation evaluation was started, and in July, 1980, claimant was referred for employment reentry assistance. Ingram & Associates was the assigned vendor, and it determined that claimant had transferrable skills and experience and began to assist him in finding employment. The Field Services Division then decided that claimant was not eligible for an authorized training program. Thereafter, in December, 1980, Ingram & Associates closed its file.

After a hearing, the referee found that claimant was eligible for a work skills improvement program which Field Services Division has authority to provide. Claimant was awarded 30 percent permanent partial disability. The Board reversed the referee's finding that claimant was eligible for a work skills improvement program and increased the permanent partial disability award to 40 percent. The main issue is whether claimant is a vocationally handicapped worker eligible for vocational rehabilitation in an authorized training program.

The administrative rule that governs this determination, OAR 436-61-004(4) (as amended effective February 1, 1978), provides:

> "Vocationally handicapped worker means a worker who is unable to return to his regular employment because of permanent residuals of an occupational injury or disease, and who has no other skills, aptitudes or abilities which would enable him to return to *gainful employment.*" (Emphasis supplied.)

The evidence is clear that claimant is unable to return to his regular employment on the green chain because of permanent residuals of the 1978 occupational injury to his back. He cannot do repetitive heavy lifting or bending due to his low back injury. Employer contends, however, that claimant has other skills, aptitudes or abilities which would enable him to return to gainful employment, making retraining unnecessary. Employer also maintains that, because claimant can obtain work paying the minimum wage, he is gainfully employable and not eligible for retraining.

Claimant is 42 years old and has a high school education. He worked for Boeing Aircraft from 1961 to 1969 as a drafter. The skills he developed at that job well over 14 years ago are the skills pointed to by employer to show his employability with transferrable skills. The state of the art has changed since 1969 when claimant was laid off by Boeing. The referee found that there was little evidence of claimant's *current* ability to use the skills he learned at Boeing. In fact, Ingram & Associates never measured his current skill ability in blueprint reading and in the use of measuring devices.

Employer's other contention is that claimant possesses skills and abilities sufficient to allow him to obtain gainful employment. This is obvious, employer maintains, from test results showing claimant to have "generally average" abilities together with employment offers to entry-level positions paying minimum wages.

The purpose of the workers' compensation legislation is to "restore the injured worker as soon as possible and as near as possible to a condition of self support and maintenance as an able-bodied worker." ORS 656.268(1). Workers' compensation was developed not just to compensate a worker who has been injured on the job, but also to enable the worker to reenter the job market and become employed again in a position as

near as possible in pay and status to the one the claimant has been forced by injury to leave. There are no specific guidelines to determine what "as near as possible" means; it must be determined on a case-by-case basis. Gainful employment, in the light of the intent of the workers' compensation statutes (and the regulations of the Department), must bear a reasonable relationship to an individual's experience and background, including prior earnings. For example, it would be unrealistic to expect that a worker could be seen as having been restored to employment "as near as possible" to his or her former employment if he was formerly a diesel mechanic and is now working at a fast food restaurant because that was the only job he could get without retraining.

There is no requirement that a worker who has been offered *any* job paying *something,* even minimum wage, is gainfully employable and therefore ineligible for retraining. This is especially true where a worker has held a job paying substantially more than the minimum wage. It would be unreasonable to require a worker who has gained experience over the years and worked his or her way up to a responsible, well-paying position to start over at a job paying the minimum wage after being injured on the job. Here, the minimum wage jobs claimant can get pay less than one-third of his preinjury earnings and much less than he would be earning now if he had not been injured. While it may not be possible to retrain claimant so that he can reenter the job market and become employed at the same pay he would now be making if he had not been injured, it is possible, after retraining, for his earnings at a new job to be reasonably *comparable.*

Orthopaedic Consultants found that claimant was in need of vocational assistance. The referee agreed, and so do we. Claimant should have a fair opportunity to be treated in the manner outlined by the workers' compensation statutes. We hold that he is entitled to a program of rehabilitation.

Affirmed in part; reversed in part; and remanded to admit claimant to an authorized training program.