Argued and submitted February 15, affirmed June 19, reconsideration denied October 2, petition for review allowed November 26, 1991 (312 Or 525)

In the Matter of the Compensation of
Betty S. Tee, Claimant.

Betty S. TEE,
*Petitioner,*

*v.*

ALBERTSONS, INC.,
*Respondent.*

(88-11538; CA A64558)

813 P2d 574

Phil Goldsmith, Portland, argued the cause for petitioner. With him on the brief were Robert K. Udziela, Stephen V. Piucci, and Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Thomas M. Christ, Portland, argued the cause for respondent. With him on the brief was Mitchell, Lang & Smith, Portland.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

Rossman, J., dissenting.

## BUTTLER, P. J.

Claimant seeks review of a decision of the Workers' Compensation Board reversing the referee's order and holding that she is not permanently and totally disabled as a result of her compensable low back and leg injury and chronic pain syndrome.

The Board's findings are supported by substantial evidence on the whole record. Before her low back injury in 1984, claimant worked for employer as a meat wrapper; she has not worked since 1985. The Board found that she is employable without training for four to six hours per day as a telemarketer or hotel/motel inspector. Although, as claimant contends, the Board did not make an explicit finding that she is *physically* capable of doing those jobs, its finding that she is employable in them is sufficient.

ORS 656.206(1)(a) defines permanent total disability in part as any disability "which permanently incapacitates the worker from regularly performing work at a gainful and suitable occupation." A "suitable" occupation is "one which the worker has the ability and the training or experience to perform * * *." The Board's findings support its conclusion that the suggested employment is suitable.

The statute does not define the term "gainful." Claimant contends that, because she could earn only one-third as much as she did before the injury in either of the two suggested employments, neither of them is "gainful." It is well settled that the ability of a claimant to perform regular part-time work precludes an award for permanent total disability. *Lankford v. Commodore Corporation,* 92 Or App 622, 625, 759 P2d 329 (1988); *Georgia-Pacific Corp. v. Perry,* 92 Or App 56, 757 P2d 437, *rev den* 307 Or 77 (1988); *Pournelle v. SAIF,* 70 Or App 56, 60, 687 P2d 1134 (1984); *Hill v. SAIF,* 25 Or App 697, 701, 550 P2d 752, *rev den* (1976); *see Bohrer v. Weyerhaeuser Company,* 93 Or App 751, 763 P2d 1207 (1988). We have never measured "gainfulness" as used in ORS 656.206 in terms of the claimant's level of earnings or hours of employment.

Claimant relies on *Frame v. Crown Zellerbach,* 63 Or App 827, 665 P2d 879, *on recon* 65 Or App 801, 672 P2d 70 (1983), for the proposition that employment is "gainful" only

if the earnings from the proposed employment bear a reasonable relationship to the worker's pre-injury earnings. However, the question in *Frame* was whether the claimant was eligible for vocational assistance. OAR 436-61-004(4) required the insurer to provide vocational assistance to any worker unable to return to "gainful employment." In discussing the meaning of the term in that context, we said:

> "The purpose of the workers' compensation legislation is to 'restore the injured worker as soon as possible and as near as possible to a condition of self support and maintenance as an able-bodied worker.' ORS 656.268(1). Workers' compensation was developed not just to compensate a worker who had been injured on the job, but also to enable the worker to reenter the job market and become employed again in a position as near as possible in pay and status to the one the claimant has been forced by injury to leave. There are no specific guidelines to determine what 'as near as possible' means; it must be determined on a case-by-case basis. *Gainful employment, in the light of the intent of the workers' compensation statutes (and the regulations of the Department), must bear a reasonable relationship to an individual's experience and background, including prior earnings.* For example, it would be unrealistic to expect that a worker could be seen as having been restored to employment 'as near as possible' to his or her former employment if he was formerly a diesel mechanic and is now working at a fast food restaurant because that was the only job he could get without retraining." 63 Or App at 830. (Emphasis supplied.)

We adhere to the holding and analysis in *Frame;* however, the considerations were different in that case and the definition that we gave to "gainful" for the purpose of determining eligibility for vocational assistance does not apply here. In *Frame,* we correctly held that the term "gainful" in the context of eligibility for vocational assistance must be construed to require vocational assistance for workers who would not otherwise be able to return to work comparable to their pre-injury employment.

Implicit in the workers' compensation law is the legislature's recognition that not all workers will recover sufficiently from their compensable injuries to return to comparable work, even with vocational assistance. Those who do not are compensated for their level of permanent disability, either partial or total. ORS 656.206(1)(a) cannot be read

to require that all workers who are unable to return to an occupation comparable in pay to their pre-injury occupation be compensated for permanent total disability, even if they are capable of *some* work. That would be contrary to the legislature's decision to compensate partial disability as partial disability. ORS 656.214(5). It would also frustrate the legislative goal of encouraging those who are capable of returning to work, even if only on a regular part-time basis, to do so. ORS 656.012(2)(c).

■ A worker is permanently and totally disabled if the injury has left her incapable of performing any service for which there exists a hypothetically normal labor market. *See, e.g., Wilson v. Weyerhaeuser,* 30 Or App 403, 567 P2d 567 (1977); *see also Harris v. SAIF,* 292 Or 683, 642 P2d 1147 (1982). The converse of that is also true: A worker who is capable of performing regularly any service for which there exists a hypothetically normal labor market can be *gainfully* employed and, therefore, is not permanently and totally disabled, as the term is used in ORS 656.206(1)(a).

■ Here, the evidence supports the Board's findings that claimant is capable of working regularly as a telemarketer or hotel/motel inspector, albeit on a part-time basis, and that the work is available. Although that employment may not pay as well as her pre-injury occupation, it is remunerative and is, therefore, gainful.[1] The Board did not err in concluding that claimant is not entitled to an award for permanent total disability.

Affirmed.

**ROSSMAN, J.,** dissenting.

The majority holds that the Board did not err in concluding that, because claimant is employable in jobs earning only one-third of her pre-injury wages, she is "gainfully" employable and is, therefore, ineligible for permanent total disability (PTD) benefits. I disagree.

We have already defined the statutory term "gainful employment" as that which "bear[s] a reasonable relationship to an individual's experience and background, including

---

[1] Claimant does not contend that she is entitled to additional vocational services or that she has been denied them.

prior earnings." *Frame v. Crown Zellerbach,* 63 Or App 827, 831, 665 P2d 879, *on recon* 65 Or App 801, 672 P2d 70 (1983); *see also* ORS 656.340(6).[1] Although *Frame* involved eligibility for vocational assistance, I see no reason to limit the construction of "gainful employment" to that context. The objectives of workers' compensation are the same in both the vocational assistance and disability benefits areas: to restore the worker to a position as near as possible in pay and status as existed before the injury. A term should be applied consistently in construing a statutory scheme. It is inappropriate to give differing meanings to the term when applying parts of the same law.

The great disparity between claimant's pre- and post-injury earning capacity compels the result that the telemarketer and room inspector jobs are not gainful employment. They do *not* bear a reasonable relationship to her previous earnings and, as we explained in *Frame,* "[t]here is no requirement that a worker who has been offered *any* job paying *something,* even minimum wage, is gainfully employable * * *." 63 Or App at 831. (Emphasis in original.) I am especially concerned with today's holding because — assuming that there actually is a market for it — the telemarketing job might be used to deny PTD benefits in all cases, because the inference is that almost anyone, regardless of physical disability, can perform it. If that comes to pass, it will be because the majority has effectively eviscerated the term "gainful" from the statute.

Accordingly, I dissent.

---

[1] In response to *Frame,* the 1987 Legislature amended ORS 656.340(6) to provide specifically that a worker is eligible for vocational assistance

"(a) * * * if the worker will not be able to return to the previous employment or to any other available and suitable employment with the employer at the time of injury, and the worker has a substantial handicap to employment.

"(b) As used in this subsection:

"(A) a 'substantial handicap to employment' exists when the worker, because of the injury, lacks the necessary physical capacities, knowledge, skills and abilities to be employed in *suitable employment.*

"(B) *'Suitable employment'* means:

"* * * * *

"(iii) Employment that produces a wage *within 20 percent* of that currently being paid for employment which was the worker's regular employment." (Emphasis supplied.)

*See also* ORS 656.340(14).