Argued and submitted January 14, decision of Court of Appeals modified,
and case remanded to Workers' Compensation Board for further consideration
November 25, 1992

In the Matter of the Compensation of
Betty S. Tee, Claimant.

Betty S. TEE,
*Petitioner on Review,*

*v.*

ALBERTSONS, INC.,
Self Insured Employer,
*Respondent on Review.*

(WCB 88-11538; CA A64558; SC S38437)

842 P2d 374

■■■■■■■■■■■■■■■

Kevin N. Keaney, of Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland, argued the cause for petitioner on review and filed the petition for review.

Thomas M. Christ, Portland, argued the cause for respondent on review and filed the response to the petition.

Donald M. Hooton, Eugene, filed an *amicus curiae* brief on behalf of Oregon Trial Lawyers Association.

PETERSON, J.

■■■■■■■■■■■■■■■

Graber, J., filed a dissenting opinion.

## PETERSON, J.

Here, an injured worker has been found capable of part-time work in an occupation, but her earnings would be approximately one-third of her pre-injury wages. She claims that her earnings are so greatly reduced as to entitle her to a permanent total disability (PTD) award. ORS 656.206(1)(a) provides:

> " 'Permanent total disability' means the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the worker from regularly performing work at a gainful and suitable occupation. As used in this section, a suitable occupation is one which the worker has the ability and the training or experience to perform, or an occupation which the worker is able to perform after rehabilitation."

Claimant contends that the occupation that she has been found capable of performing part-time does not constitute a "gainful" occupation. She asserts:

> "The maximum earnings claimant could make post-injury without training is less than one-third of what she earned pre-injury. * * * [T]his disparity between pre-injury and post-injury salary establishes that the jobs which the Board found claimant could perform, as a matter of law, do not constitute gainful employment."[1]

Claimant, while working as a meat wrapper, suffered a back injury. Thereafter, claimant's back condition worsened, and she underwent a lumbar laminectomy and disectomy, left L4-5 and L5-S1 with an L4 through sacrum fusion. Claimant achieved a good result and returned to work in April 1981 without significant problems. In October 1984, while working for Albertson's, Inc. (employer), a self-insured employer, claimant slipped and almost fell, causing low back and bilateral leg symptoms. Claimant was off work for a brief period of time and then returned to work for three months, but was unable to continue. Claimant has not worked since mid-March 1985.

Before her October 1984 injury, claimant worked a 40-hour week at an hourly rate of pay of $10.90. Her gross

---

[1] Claimant does not assert, as an independent ground for reversal, that her inability to work full-time entitles her to a PTD award.

weekly pay was $436. The record contains evidence that telemarketing and hotel/motel inspector jobs pay $4.75 and $4.00 per hour, respectively, and that claimant could earn from $80 to $142.50 per week for such part-time work. As a part-time hotel/motel inspector or telemarketer, claimant's earnings would be as little as 18.3 percent of her pre-injury weekly wage (20 hours work at $4 per hour), but no more than 32.7 percent of her pre-injury weekly wage (30 hours at $4.75 per hour).

The referee concluded that claimant was not capable of regularly performing work at a gainful and suitable occupation and thus was entitled to PTD benefits. The Workers' Compensation Board (Board) reversed that part of the referee's order, concluding that claimant was "employable without training as a telemarketer and hotel/motel inspector" and that such work was available. Claimant does not contest that finding. The Board concluded that claimant was entitled to an award of 75 percent unscheduled permanent partial disability. The Court of Appeals, with one judge dissenting, affirmed. *Tee v. Albertsons, Inc.*, 107 Or App 638, 813 P2d 574 (1991). We modify the decision of the Court of Appeals and remand the case to the Board.

ORS 656.206(1) defines PTD as a loss "which permanently incapacitates the worker from regularly performing work at a *gainful* and *suitable* occupation." (Emphasis added.) The word "occupation" is modified by both "gainful" and "suitable." The term "suitable occupation" is defined in ORS 656.206(1)(a) as "one which the worker has the ability and the training or experience to perform, or an occupation which the worker is able to perform after rehabilitation." The term "gainful occupation" is not defined by statute or rule. The decision in this case turns on the meaning of the term "gainful occupation" contained in the definition of PTD in ORS 656.206(1)(a) of the Workers' Compensation Law.

Before 1987, workers' compensation appeals to the Court of Appeals were *de novo*. ORS 656.298(6) (1985). In 1987, the legislature amended ORS 656.298(6) to provide: "Review shall be as provided in ORS 183.482(7) and (8)." Or Laws 1987, ch 884, § 12a. Appeals to the Court of Appeals and

this court are no longer *de novo*; reviews are under the Administrative Procedures Act, ORS 183.482.[2]

In ascertaining the meaning of "gainful occupation," we follow the methodology summarized in *Springfield Education Assn. v. School Dist.*, 290 Or 217, 223-30, 621 P2d 547 (1980). In *Springfield*, this court discussed the allocation between administrative agencies and courts of responsibility for giving specific meaning to statutory terms. *Id.* at 221-30. The opinion divided statutory terms into three classes, each of which conveys to the agency different responsibilities for definition. The first class, terms of precise meaning, requires the agency only to apply the terms to the facts. The second class, inexact terms, comprises a complete expression of legislative policy and requires the agency to interpret the legislature's meaning, either by rule or by a decision in a contested case. The third class, terms of delegation, is incomplete legislation that the agency is authorized to complete, by

---

[2] ORS 183.482(7) and (8) provide:

"Review of a contested case shall be confined to the record, the court shall not substitute its judgment for that of the agency as to any issue of fact or agency discretion. In the case of disputed allegations of irregularities in procedure before the agency not shown in the record which, if proved, would warrant reversal or remand, the Court of Appeals may refer the allegations to a Master appointed by the court to take evidence and make findings of fact upon them. The court shall remand the order for further agency action if it finds that either the fairness of the proceedings or the correctness of the action may have been impaired by a material error in procedure or a failure to follow prescribed procedure.

"(8)(a) The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b) The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:

"(A) Outside the range of discretion delegated to the agency by law;

"(B) Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or

"(C) Otherwise in violation of a constitutional or statutory provision.

"(c) The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

making rules within the range of discretion established by the statutes. *Id.* at 223.

The term "gainful occupation" in ORS 656.206(1)(a) is a statutory term within the second class described in *Springfield.* That is, it is a statutory term that embodies a complete expression of legislative meaning, even though its exact meaning is not necessarily obvious. To determine the intended meaning of an inexact statutory term, this court "look[s] to extrinsic indicators such as the context of the statutory term, legislative history, a cornucopia of rules of construction, and [its] own intuitive sense of the meaning which legislators probably intended to communicate by use of the particular word or phrase." *Id.* at 224. The ultimate inquiry is what the legislature intended by using the term. *Ibid.* The determination of the meaning of a statutory term is one of law, ultimately for the court. *Ibid.* Thus, the inquiry in this case is: What did the legislature intend by using the word "gainful" in ORS 656.206(1)(a)?[3]

Claimant makes several arguments in support of her contention that a "gainful" occupation, ORS 656.206(1)(a), is one that pays a wage comparable to the worker's pre-injury wage. First, she contends that the court, in interpreting the word "gainful," as used in ORS 656.206(1)(a), should adopt the statutory definition of "suitable employment" found in ORS 656.340(6)(b)(B)(iii), a definition that is used to determine whether an injured worker is entitled to vocational assistance,[4] and that incorporates comparability of pre-injury and post-injury wages. Under ORS 656.340, an injured worker who is not able to obtain "suitable employment" may be entitled to vocational assistance, at the expense of the insurer or self-insured employer, to enable the worker to achieve "a wage as close as possible to the worker's wage at the time of injury." ORS 656.340(5).[5] "Suitable

---

[3] In construing a statute, the task of this court is to discern the intent of the legislature. ORS 174.010; *Mattiza v. Foster*, 311 Or 1, 4, 803 P2d 723 (1991). Neither party has discussed any legislative history of ORS 656.206(1). We reviewed the legislative history to see whether it contains anything concerning the meaning of "gainful," as used in ORS 656.206(2). It does not.

[4] There is no issue in the present case concerning whether claimant is entitled to vocational assistance.

[5] The right to vocational assistance is limited by ORS 656.340(14)(b), which provides:

employment" is defined, in part, as "[e]mployment that produces a wage within 20 percent of that currently being paid for employment which was the worker's regular employment." ORS 656.340(6)(b)(B)(iii). Claimant argues that that definition of what constitutes "suitable" employment should apply in the determination of PTD.

The major flaw in claimant's argument is that the definition of "suitable employment" on which she relies is limited to the statute containing the definition. ORS 656.340(6)(b)(B) provides: "As used in this subsection[,] * * * '[s]uitable employment' means * * *." That definition is not applicable to the determination of eligibility for PTD benefits. The PTD statute, ORS 656.206(1)(a), contains its own definition of "suitable occupation." As already noted, that definition provides that, "[a]s used in this section, a suitable occupation is one which the worker has the ability and the training or experience to perform, or an occupation which the worker is able to perform after rehabilitation." ORS 656.206(1)(a). Comparability to pre-injury wages is not part of that definition. Claimant wants "suitable" to mean "suitable" and "gainful" to mean "suitable." By using the word "gainful" in ORS 656.206(1)(a), the legislature signaled its intention that "gainful occupation" means something different from "suitable occupation," the difference being that a "gainful occupation" is an occupation for profitable remuneration. There is nothing to suggest that the definition of "suitable employment" in ORS 656.340(6)(b)(B) applies to a determination of PTD or in any context other than a determination under subsection (6) of ORS 656.340. ORS 656.340(6)(b)(B) provides no basis for adopting the definition proposed by claimant.

Claimant next argues that the court should interpret the term "gainful" (which is not defined in ORS 656.206 or elsewhere) as the equivalent of "suitable" as defined in ORS 656.340(6)(b)(B)(iii). Claimant contends that not requiring comparability of wages for purposes of ORS 656.206(1)(a) is

---

"Training shall not be provided to an eligible worker solely because the worker cannot obtain employment, otherwise suitable, that will produce the wage prescribed in subsection (6) of this section unless such training will enable the worker to find employment which will produce a wage significantly closer to that prescribed in subsection (6) of this section."

contrary to the purposes for which the Workers' Compensation Law was enacted. Claimant asserts that denying her PTD benefits because she is capable of regular part-time, low-paying employment is not consistent with the objective of returning "the injured worker physically and economically to a self-sufficient status in an expeditious manner and to the greatest extent practicable." ORS 656.012(2)(c).

There are two flaws in that argument. One is that it gives no weight to the significant difference between the specific goal of vocational assistance — which is to "return the worker to employment which is as close as possible to the worker's regular employment at a wage as close as possible to the worker's wage at the time of injury," ORS 656.340(5) — and the broader goal of the Workers' Compensation Law — which is "[t]o restore the injured worker physically and economically to a self-sufficient status," ORS 656.012(2)(c). Second, claimant's argument discounts the different roles played by the PTD benefits statute and the vocational assistance statute and virtually ignores the existence and role of the statute providing for permanent partial disability (PPD) benefits, ORS 656.214, in achieving the declared objectives of the Workers' Compensation Law.

An award of PTD or PPD benefits aims to compensate an injured worker for permanently lost earning capacity, thereby promoting the goal of returning the worker to economic self-sufficiency. An injured worker who is incapable of regularly working at a gainful and suitable occupation is entitled to PTD benefits. ORS 656.206(1)(a). An injured worker who is not permanently totally disabled, but suffers from an unscheduled PPD,[6] is entitled to compensation for that proportion of earning capacity permanently lost as a result of a compensable injury. ORS 656.214(5). PPD benefits aim to compensate the worker who is capable of regular work, but whose earning capacity has been diminished permanently as a result of injury.[7]

[6] ORS 656.214(1)(b) defines PPD. ORS 656.214(2) to (4) set forth a schedule for determining the amount of compensation that a claimant is entitled to receive for the permanent loss of use or function of various body parts. ORS 656.214(5) sets forth the method for determining compensation for a compensable injury resulting in an unscheduled PPD.

[7] Claimant also relies on a 1983 decision of the Court of Appeals that interpreted "gainful employment" for purposes of determining eligibility for vocational

Vocational assistance, on the other hand, aims to ameliorate lost earning capacity by retraining. It promotes the general goal of self-sufficiency by assisting permanently disabled workers to achieve wages comparable to their pre-injury wages. ORS 656.340(6) and (14). If vocational assistance is successful, the injured worker's status may be re-evaluated to allow for a reduction in the extent or for the complete elimination of permanent disability benefits. *See* ORS 656.206(5) (requiring insurers to re-examine PTD claims every two years); ORS 656.325(3) (awards of PTD and unscheduled PPD benefits shall be subject to periodic examination and adjustment). Because vocational assistance serves a different purpose than that served by PTD and PPD benefits, there is no sound reason for interpreting the term "gainful" in ORS 656.206(1)(a) as equivalent to "suitable" as defined in ORS 656.340(6)(b)(B)(iii).

Claimant relies on *Harris v. SAIF*, 292 Or 683, 642 P2d 1147 (1982), which also concerned eligibility for PTD benefits. There, the court determined that an injured worker who earned substantial income on real estate investments still could be entitled to PTD benefits, because the criterion for PTD is not income, but employability. 292 Or at 694-95. The court stated the test as follows:

"The determination of [PTD] status does not turn upon whether the claimant has money-earning capacity, but rather upon whether the claimant is currently employable or

---

rehabilitation under ORS 656.340 (1983). *Frame v. Crown Zellerbach*, 63 Or App 827, 665 P2d 879, *former opinion adhered to*, 65 Or App 801, 672 P2d 70 (1983). At that time, ORS 656.340 (1983) provided for vocational assistance to be provided in accordance with administrative rules. The inability of a worker to return to "gainful employment" qualified the worker for vocational assistance. The Court of Appeals concluded:

"Gainful employment, in the light of the intent of the workers' compensation statutes (and the regulations of the Department), must bear a reasonable relationship to an individual's experience and background, including prior earnings." 63 Or App at 831.

In 1987, the legislature amended ORS 656.340 to set forth the eligibility criteria within the statute, including the definition of what constitutes suitable employment for purposes of determining eligibility. Or Laws 1987, ch 884, § 15. Claimant argues that the legislature's incorporation of the *Frame* court's wage comparability element into the statutory definition of "suitable employment" amounts to a legislative adoption of the reasoning and conclusions made by the *Frame* court. Whether or not that is true, it is beside the point. The present case concerns the right of an injured worker to PTD benefits, not to vocational assistance.

able to sell his services on a regular basis in a hypothetically normal labor market." *Id.* at 695.

The claimant's active, albeit irregular, participation in his real estate investment activities, and his ability thereby to earn income did not mean that he was no longer permanently totally disabled.[8] *Id.* at 695-96. The *Harris* court remanded the case to the Board for a determination of the claimant's employability at some occupation. *Id.* at 697. *Harris* does not apply here, because the question that claimant raises is not whether claimant is *employable* (which was the issue in *Harris*), but rather whether the occupation that she is deemed capable of performing is *gainful*.

Requiring post-injury employment to produce a wage comparable to a worker's pre-injury wage, in order to be "gainful," would judicially overrule, at least in part, the statutory provision for unscheduled PPD. According to claimant's argument, any worker with a permanent disability who is not capable of post-injury employment that would produce 80 percent of the wages paid for the worker's pre-injury employment would be entitled to PTD benefits. PPD benefits thus would be limited to workers whose earning capacity was diminished less than 20 percent as a result of an unscheduled permanent disability. There is nothing in the PPD statute that indicates that it is so limited. The legislature has created a system that compensates unscheduled PPD on the basis of its permanent effect on earning capacity. The decision to compensate injured workers for unscheduled PPD reflects a

---

[8] In discussing the test for PTD, the court in *Harris v. SAIF*, 292 Or 683, 695, 642 P2d 1147 (1982), quoted the following passage from 2 Larson, Workmen's Compensation Law 10-164.21 to 10-164.49, § 57.51 (1976):

" 'Total disability' in compensation law is not to be interpreted literally as utter and abject helplessness. Evidence that claimant has been able to earn occasional wages or perform certain kinds of gainful work does not necessarily rule out a finding of total disability nor require that it be reduced to partial. The task is to phrase a rule delimiting the amount and character of work a man can be able to do without forfeiting his totally disabled status."

The quoted passage is not contrary to our discussion. ORS 656.206(1)(a) reflects the legislature's approach to the task of "phras[ing] a rule delimiting the amount and character of work a [person] can be able to do without forfeiting his [or her] totally disabled status." *Ibid.* The statute addresses Larson's concerns by requiring that an injured worker be "permanently incapacitate[d] * * * from *regularly performing work at a gainful and suitable occupation*" (emphasis added), in order for the worker to be considered permanently totally disabled. Whether or not the statute completely satisfies the concerns posited by Larson, however, is not relevant to our task.

policy choice that such workers should be required to earn that portion of their income that they are capable of earning in regular employment. PPD benefits are for injured workers who are permanently *partially* disabled.

Having rejected claimant's contentions concerning the meaning of "gainful occupation," our "ultimate task [is] to discern and apply the legislature's intended meaning." *Springfield Education Assn. v. School Dist., supra*, 290 Or at 217. As stated, ORS 656.206(1)(a) itself defines a "suitable occupation" as "one which the worker has the ability and the training or experience to perform, or an occupation which the worker is able to perform after rehabilitation." The definition of "suitable occupation" concerns work that the worker is capable of performing, irrespective of the remuneration received for the work. What is the worker capable of doing? By contrast, the term "gainful occupation" concerns remuneration; it relates to the earnings that the worker can obtain by working at a "suitable occupation." The plain and ordinary meaning of "gainful" is "profitable, lucrative: *gainful employment*." The Random House Dictionary of the English Language 782 (2d ed 1987) (emphasis in original). The term "gainful occupation" contained in the definition of PTD in ORS 656.206(1)(a) means profitable remuneration.

The Board found that "both the telemarketing job and the hotel/motel room inspectress jobs were gainful and suitable employments for claimant." It then "concluded that claimant is not permanently and totally disabled" and awarded claimant an unscheduled permanent disability of 75 percent. The Board did not have the benefit of this opinion in deciding whether claimant's part-time employment was for profitable remuneration. Its decision was not made in light of the meaning of "gainful occupation" contained in this opinion. Because this is the first decision of this court interpreting the meaning of "gainful occupation," and because the Board is the appropriate body to apply the meaning of "gainful occupation" under the facts of this case in performing its fact-finding function, it is appropriate to remand this case to the Board for further consideration in light of this opinion.[9]

---

[9] Claimant also contends that the Board did not make "a specific and express finding" that claimant "is presently able to regularly perform a gainful and suitable occupation." In light of our disposition, we need not address this issue.

Therefore, the decision of the Court of Appeals is modified, and this case is remanded to the Workers' Compensation Board for further consideration.

**GRABER, J.,** dissenting.

I concur in the majority's opinion, with one key exception. The majority defines "gainful occupation" in ORS 656.206(1)(a) to mean work for "profitable remuneration." 314 Or at 643. The adjective "profitable" is, in my view, unnecessary, ambiguous, and potentially misleading.

A "gainful occupation" within the meaning of the statute defining permanent total disability is simply an occupation for which the worker receives a lawful wage. By contrast, if one's only suitable occupation is as an unpaid volunteer, an upaid homemaker, or the like, one's occupation is not "gainful." It matters not — for the purpose of ORS 656.206(1)(a) — whether the worker's remuneration results in a "profit." For example, a worker who is capable of owning a print-shop that is expected to gross $50,000 per year has a "gainful occupation" even if the business happens to lose money one year, and a worker who is employable at a suitable minimum-wage job has a "gainful occupation" even if expenses make it difficult to make ends meet. The statute is intended only to define a status of permanent total disability, nothing more.

Because I would not add the undefined concept of "profitable" to the definition of PTD, I would affirm, rather than returning this case to the Workers' Compensation Board. Accordingly, I dissent.