Argued and submitted October 17, 1996, affirmed June 11, 1997

In the Matter of the Compensation of
Betty S. Tee, Claimant.

Betty S. TEE,
*Petitioner,*

*v.*

ALBERTSON'S, INC.,
*Respondent.*

(88-11538; CA A91626)

939 P2d 668

Kevin Keaney argued the cause for petitioner. With him on the brief was Pozzi Wilson Atchison.

Thomas M. Christ argued the cause for respondent. With him on the brief was Mitchell, Lang & Smith.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

At issue in this workers' compensation case is whether claimant is incapable of regularly performing work at a "gainful" and suitable occupation and, thus, is permanently and totally disabled. ORS 656.206(1)(a) defines a "gainful" occupation as "one that pays wages equal to or greater than the state mandated hourly minimum wage." Claimant is capable of working at a part-time telemarketing job, which pays—on an hourly basis—more than the state-mandated minimum wage. She argues that she nevertheless is not capable of "gainful" employment, because, after taking into account the expenses associated with her employment in the telemarketing business, the "net gain" to her is next to nothing. The Board held that ORS 656.206(1)(a) does not incorporate such a "net gain" analysis and that, instead, it defines "gainful" employment solely by reference to the hourly minimum wage. On that basis, the Board concluded that claimant is not permanently and totally disabled. We agree with the Board's reading of ORS 656.206(1)(a) and affirm.

This case has an unfortunately long history, which must be stated at least in brief to frame properly the issues before us. Claimant worked for employer as a meat wrapper. In 1984, she injured her back. Claimant filed a claim and contended that she was entitled to permanent *total* disability. Employer insisted that she was entitled to permanent *partial* disability only. At the time, ORS 656.206(1)(a) provided that a worker is entitled to permanent total disability only if he or she is incapable of "regularly performing work at a gainful and suitable occupation." The statute, however, did not define what is meant by "gainful" occupation. In 1988, an administrative law judge (ALJ) found that claimant was not capable of gainful employment and therefore was entitled to permanent total disability. The Board reversed, finding that claimant was employable as a telemarketer or a hotel/motel inspector on a part-time basis at or above the minimum wage. The Board awarded claimant 75 percent permanent partial disability.

This court affirmed, *Tee v. Albertsons, Inc.*, 107 Or App 638, 813 P2d 574 (1991), but the Supreme Court modified our decision and remanded for reconsideration. *Tee v. Albertsons, Inc.*, 314 Or 633, 842 P2d 374 (1992). According to the Supreme Court, whether employment is "gainful" within the meaning of ORS 656.206(1)(a) depends on the extent to which it provides "profitable remuneration." *Tee*, 314 Or at 643. Resorting to the *Random House Dictionary*, the majority concluded that "[t]he plain and ordinary meaning of 'gainful' is 'profitable, lucrative: *gainful employment.*' " *Id.* (emphasis in original). Having said that, the majority then noted that "[t]he Board did not have the benefit of this opinion in deciding whether claimant's part-time employment was for profitable remuneration." *Id.* Accordingly, it remanded the case to the Board for a determination whether claimant is capable of work that constitutes "profitable remuneration." *Id.*

Justice Graber dissented. She contended that the construction of the statutory term "gainful" employment was even simpler than the majority found it to be. According to Justice Graber, "gainful" employment "is simply an occupation for which the worker receives a lawful wage." *Id.* at 644. Whether the worker's expenses associated with that employment produce a "profit" for the worker, she concluded, "matters not." *Id.*

The Board remanded the case to the ALJ. The parties then stipulated that the hotel/motel inspector job was no longer available, but that employment in telemarketing remained available at a wage that exceeded the minimum wage. The parties also stipulated that, at that time, the state minimum wage was $3.35 per hour. The ALJ found that claimant would have a number of expenses associated with employment in the telemarketing field. The ALJ then concluded that, taking into account all the relevant expenses, claimant's "net gain" from her part-time employment in telemarketing would be 60 cents per hour and that such remuneration is not "profitable."

The Board affirmed by order dated May 25, 1995. Shortly after the Board issued its order, however, the 1995

Legislative Assembly amended ORS 656.206(1), so that the statute now explicitly defines "gainful" employment:

> "As used in this section, a gainful occupation is one that pays wages equal to or greater than the state mandated hourly minimum wage."

ORS 656.206(1)(a). The amendments took effect June 7, 1995, and the legislature expressly provided that they apply to cases pending at that time. Or Laws 1995, ch 332, § 66(1). Employer timely moved for reconsideration in the light of the newly enacted amendment. The Board allowed reconsideration and reversed its former order, holding that, under the current definition, a "gainful" occupation is "an occupation that pays at or above the minimum wage rate" and nothing more. It is from that order on reconsideration that claimant now seeks review.

Claimant argues that the Board erred in interpreting the term "gainful," as used in ORS 656.206(1), to mean only paid at the minimum wage. Claimant acknowledges that the 1995 Legislative Assembly amended the statute to include a definition of the word in such terms, but she insists that the definition was intended to describe only one criterion of "gainful" employment:

> "[T]he amended statute provides that the minimum rate *qualifies* as a *potential* 'gainful occupation.' But the amended statute is silent about, among other things, the threshold number of hours separating permanent total from permanent partial disability. * * *
>
> "* * * * *
>
> "The legislature could have specified, but did not specify, what that threshold is, and there is also no indication that the legislature intended to overrule the Board's 'net gain' analysis."

(Emphasis in original.) In support of her construction of the statute, claimant relies on what she characterizes as its "plain" meaning and a portion of the legislative history that includes a statement of one of the sponsors of the amendment to the effect that it would be unreasonable to conclude that a person would have to spend more than she earned to get a job. Employer responds that the statute's meaning—that

"gainful" employment "is" employment that pays the minimum wage—is plain on its face and that we need pursue the matter no further than that.

When we construe the language of a statute,

> "we are to effectuate the intentions of the legislature, 'if possible.' ORS 174.020. To ascertain the intentions of the legislature, we examine the text, its context and, if necessary, the legislative history. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). In all events, however, we are constrained by the reasonable construction of the language that the legislature actually enacted. We are forbidden, both by statutory command and by constitutional principles, to insert language that the legislature, whether by design or by default, has omitted. ORS 174.010; *Fernandez v. Board of Parole*, 137 Or App 247, 252, 904 P2d 1071 (1995)."

*Deluxe Cabinet Works v. Messmer*, 140 Or App 548, 553, 915 P2d 1053, *rev den* 324 Or 305 (1996). ORS 656.206(1)(a) defines "permanent total disability" as:

> "[T]he loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the worker from regularly performing work at a gainful and suitable occupation. As used in this section, a gainful occupation is one that pays wages equal to or greater than the state mandated hourly minimum wage. As used in this section, a suitable occupation is one that the worker has the ability and the training or experience to perform, or an occupation that the worker is able to perform after rehabilitation."

ORS 656.206(3) further provides that, to obtain permanent total disability benefits, the worker must prove his or her "permanent total disability status" and must establish "that the worker is willing to seek regular gainful employment" and that the worker has made reasonable efforts to obtain such employment.

■   At the outset, we note that, from the text of the statute, it is readily apparent that the extent to which a worker suffers permanent total disability depends on several factors, including whether the worker is incapable of "regularly performing" work that is "gainful" and "suitable." In this case,

there is no dispute that telemarketing work is "suitable" for claimant, and, likewise, there appears to be no argument that she is incapable of "regularly performing" that work. The sole dispute is whether telemarketing work is "gainful" within the meaning of ORS 656.206(1)(a).

We conclude that the statute speaks unambiguously to the point. It states that a "gainful" occupation *is* one that "pays wages equal to or greater than the state mandated hourly minimum wage." It does not say that a "gainful" occupation merely *includes* one that pays at least the minimum wage or that it *is, at a minimum,* one that pays at least the minimum wage. By its terms, it declares what a "gainful" occupation *is*. To be sure, as a matter of formal, predicate logic, it does not necessarily follow that, because the statute says that "gainful" *is* paid at least the minimum wage, the same word *also* cannot mean other things, as well (*e.g.*, "gainful" also *is* an English word and *is* seven letters long). But a statutory term is not ambiguous merely because it is capable of such logical manipulation. There must be some evidence contained in the language of the statute that gives rise to a reasonable conclusion that the legislature may have intended more than one meaning. *See, e.g., State v. Cooper*, 319 Or 162, 167, 874 P2d 822 (1994) (statutory language is ambiguous when capable of two interpretations and "either interpretation is reasonable"); *Koitzsch v. Liberty Northwest Ins. Corp.*, 125 Or App 666, 669, 866 P2d 514 (1994) (a statute is ambiguous if "it is capable of more than one reasonable interpretation"). In this case, neither the text, nor the context, nor any applicable textual canon of construction, suggests that the legislature in this case meant anything other than that "gainful" is paid at or above the minimum wage.

Even assuming, for the sake of argument, that ORS 656.206(1)(a) plausibly could be read as claimant suggests, the legislative history removes any doubt that the legislature intended, plainly and simply, to adopt the view of the statute expressed by Justice Graber in her dissent in *Tee*, namely that "gainful" means paid at or above the minimum wage, nothing more.

The amendments to ORS 656.206(1)(a) at issue were introduced in 1995 as part of Senate Bill 369, a sweeping collection of amendments to the workers' compensation statutes

of this state. As originally introduced, section 14 of SB 369 provided that ORS 656.206(1)(a) be amended by adding the following language:

> "As used in this section, a gainful occupation is one that is either full-time or part-time and pays wages equal to or greater than the state mandated hourly minimum wage."

In introducing the bill to the Senate Committee on Labor and Government Operations, Representative Mannix, one of the bill's sponsors explained:

> "In ORS 656.206, we adopt a definition of 'gainful occupation.' The existing law states that a worker is permanently and totally disabled if unable * * * to regularly perform work at a gainful and suitable occupation. In a recent case, the Supreme Court had difficulty defining a 'gainful occupation' and sent the case back for further proceedings. This amendment adopts the definition which is currently in the Oregon Administrative Rules. In that sense, it won't make a difference in terms of claims administration, but it puts it into the statute."

Tape recording, Senate Committee on Labor and Government Operations, January 30, 1995, Tape 16, Side A at 140. As Mannix noted, existing rules—not mentioned by the Supreme Court in its opinion in *Tee*—defined "gainful occupation" as

> "occupations that are either full-time or part-time in duration and pay wages equivalent to, or greater than, the state and federal mandated minimum hourly wage."

OAR 436-30-055(1)(c) (1990). Questions arose in Committee about the extent to which a part-time worker who was paid the minimum wage would be "gainfully" employed under the proposed amendments, and the proponents of the amendments simply dropped the reference to full-time and part-time work. Jerry Keene, one of the authors of the amendments, explained that such questions more properly were considered in the context of determining whether an occupation is "regular" and "suitable" and had nothing to do with whether the occupation is "gainful":

> "[There's] already a whole set of case law about when part time is regular and sufficient enough to constitute a return

to regular work. And so that language [the reference to full-time and part-time work] was just taken out to leave it to those cases. Although [the amendment] still defines 'gainful employment' as one that pays the state minimum wage. But that's not the only factor—its not the—that's not the only factor that decides whether or not you get permanent total disability.

"* * * * *

"You have to be regularly performing work, and it has to be at a suitable occupation. And those are areas where there's a whole line of cases. The difficulty was, well, what is 'gainful' in that context. And this is on an hourly basis, minimum wage is—at least minimum wage is gainful. Permanent total disability is when a worker is permanently—permanently and totally disabled from regularly performing suitable and gainful employment and has made—and is willing to take such work if it were available and has made reasonable efforts to try. That's it in a nutshell. And this just goes out in one word: 'gainful.' And it says that it's gainful if it pays at least minimum wage."

Tape recording, Senate Committee on Labor and Government Operations, February 17, 1995, Tape 47, Side B at 108. The Committee Staff Summary similarly explains the effect of the change to section 14:

"ORIGINAL MEASURE EFFECT: **ORS 656.206 Adopts definition of 'gainful occupation' used in evaluating permanent total disability.** Existing law states that a worker is permanently and totally disabled if unable to regularly perform work at a gainful and suitable occupation. In a recent case the Oregon Supreme Court had difficulty defining a gainful occupation and remanded the case for further hearings to determine the meaning of the term. This amendment adopts the definition which is currently in [the] Oregon Administrative Rules, stating that a gainful occupation is one that pays at least minimum wage.

"AMENDMENT EFFECT: Permanent total disability benefits. Eliminates reference to part-time or full-time employment, leaves to existing caselaw to determine."

Testimony, Senate Committee on Labor and Government Operations, SB 369, February 17, 1995, Ex F (boldface and underscoring in original). *See Davis v. O'Brien*, 320 Or 729,

743, 891 P2d 1307 (1995) (committee staff summary, presented as committee exhibit, treated as legislative history). In that form, the Committee approved section 14 as part of SB 369 and sent the amendments to the Senate Floor.

On the floor, Senator Leonard, an opponent of the amendments, complained that the effect of the amendment to ORS 656.206(1) would be to "cut off" disability benefits if a worker is capable of earning the minimum wage. Tape recording, Senate Floor Session, February 24, 1995, Tape 28, Side B at 209. Senator Derfler, Chair of the Senate Committee on Labor and Government Operations and a sponsor of the bill, explained that "that is not true." Referring to the recent decision in *Tee*, Derfler explained that the effect of the amendment would be

> "telling the courts, because they've asked or referred back to the lower court, 'what is a wage that must be earned to be productive?' We're just establishing that level."

Tape recording, Senate Floor Session, February 24, 1995, Tape 31, Side A at 030. Derfler explained that the amendment did not change existing case law as to other considerations regarding entitlement to permanent total disability benefits. Tape recording, Senate Floor Session, February 24, 1995, Tape 31, Side A at 279. The bill then passed out of the Senate.

In hearings before the House Committee on Labor, Representative Mannix explained the effects of section 14 in the following terms:

> "The issue that then arises is a definition of 'what is a gainful occupation?' [The bill] says: 'As used in this section, a gainful occupation is one that pays wages equal to or greater than the state mandated wage.' There has previously been no definition of what is 'gainful.' You need to understand, however, that we're talking about being permanently incapacitated from regularly performing work at a gainful and suitable occupation. In other words, there are several parameters to permanent total disability. This addresses a definition as to only one element. What is 'gainful,' in terms of an occupation or employment? And this says, if it's minimum wage, that's gainful."

Tape recording, House Committee on Labor, March 3, 1995, Tape 41, Side A at 051. At that point, Representative Brown asked Mannix how the enactment of section 14 would affect the claimant in *Tee*. After listening to Brown summarize the facts of the case, Mannix responded:

"Now, from what you just described, it would seem to me to be unreasonable to say to somebody, 'you have to spend more than you're going to earn in order to get a job.' "

That is the testimony on which claimant now relies. Mannix did not end his answer there, however; he went on to add:

"I don't know what the rest of the facts of the case may be, but one issue came to me: What is—in terms of the hourly rate of pay—what is 'gainful?' That's one issue, and minimum wage is established by the legislature as being the proper standard of, you know, the minimum someone should be paid for their endeavors. But there are other factors in this statute that we don't touch. What is 'regular employment?' There's a lot of case law on that, and that has been a subject [of] discussion. What is 'suitable employment?' There's a lot of case law on that, too. * * * So, in any given case, the fact finder has to pull all of those things together."

Tape recording, House Committee on Labor, March 3, 1995, Tape 41, Side A at 120-66. The Committee approved SB 369 without further amendment to section 14, although a minority report was prepared, which eliminated the definition of "gainful" employment.

On the floor, Mannix again explained the purpose of the new definition:

"The definition of 'gainful employment' in permanent total disability. That definition is taken out by the minority report. Why does that matter? Because we have a court decision that now says, well, this must mean 'profitable remuneration.' Another lawyer's hook. How much litigation are we going to see about profitable remuneration? That's just as bad as 'gainful employment.' The rules have defined 'gainful employment' all along, for years, and they've been great. And all we do in the majority report is we use the same definition that had been in the rules for years. So the majority report doesn't change the way things are, but it locks them in."

Tape recording, House Floor Session, April 4, 1995, Tape 70, Side B at 105. The House approved the majority report.

■ We draw several conclusions from the legislative history pertaining to the issue before us. First, there is no suggestion that the legislature intended to perpetuate—as claimant suggests—the sort of "net gain" analysis that the Board developed as a method of determining whether employment is "profitable." To the contrary, it is clear that the new definition of "gainful" occupation was enacted in direct response to the Supreme Court's decision in *Tee*, to avoid what was perceived to be an unworkable construction of the statute. Second, the legislature intended to substitute for the court's "profitable remuneration" definition the one that already was contained in OAR 436-30-055 (1995), which defined "gainful" simply as work at or above the minimum wage. Finally, legislative history makes abundantly clear that the legislature understood that enacting the amended definition of "gainful" employment did not mean that anyone capable of earning a minimum wage automatically would be precluded from obtaining permanent total disability benefits. The point was emphasized again and again that the extent to which a given job is "gainful" is only one of the pertinent statutory considerations in determining entitlement to such benefits and that the amendment to the definition of that one term was not intended to affect the law regarding the others. Thus, for example, a claimant capable of working at a minimum-wage job still might be entitled to permanent total disability, because that minimum-wage job is not suitable. *See, e.g., SAIF v. Terry*, 126 Or App 558, 561, 869 P2d 876 (1994) (even if the claimant's current employment is "gainful," permanent total disability benefits still are required because that employment is not "suitable").

In this case, it is agreed that telemarketing is "regular" and "suitable" within the meaning of ORS 656.206-(1)(a). The only issue is whether that employment, which pays in excess of the state minimum wage, is "gainful" within the meaning of the same statute. We conclude that it is and that the Board therefore correctly determined that claimant is not entitled to permanent total disability.

Claimant's other assignments of error require no discussion.

Affirmed.