Argued and submitted December 12, 2017, reversed and remanded
October 30, 2019, petition for review denied March 5, 2020 (366 Or 257)

In the Matter of the Compensation of
Hobby L. Brooks, Claimant.

Hobby L. BROOKS,
*Petitioner,*

*v.*

TUBE SPECIALTIES - TSCO INTERNATIONAL
and Travelers Insurance Company,
*Respondents.*

Workers' Compensation Board
1500886; A162619

455 P3d 938

In this workers' compensation case, insurer initially denied claimant's claim for a right knee injury but, before hearing, rescinded the denial. The Workers' Compensation Board subsequently issued an order on penalties and attorney fees. The board denied claimant's request to impose a penalty against insurer under ORS 656.262(11), because it found that insurer had a legitimate doubt as to its liability when it denied the claim. The board also denied claimant's request for an attorney fee under ORS 656.386(1)(a), on the basis that claimant's attorney was not "instrumental" in obtaining rescission of the denial. On review, claimant challenges both aspects of the board's order. *Held*: The board erred in failing to address the reasonableness of insurer's predenial investigation, as relevant to whether insurer had a legitimate doubt as to its liability when it denied the claim, for purposes of deciding whether to impose a penalty under ORS 656.262(11). As for the attorney fee, upon consideration of the text, context, and legislative history of ORS 656.386(1)(a), the board did not err in denying a fee on this record. Accordingly, the court reversed and remanded on the penalty issue but not the attorney fee issue.

Reversed and remanded.

Julene Quinn argued the cause and filed the briefs for petitioner.

Benjamin C. Debney argued the cause and filed the brief for respondents.

Before Aoyagi, Presiding Judge, and Egan, Chief Judge, and DeHoog, Judge.*

_____

* DeHoog, J., *vice* Wollheim, S. J.

AOYAGI, P. J.

Reversed and remanded.

Egan, C. J., concurring in part and dissenting in part.

**AOYAGI, P. J.**

In this workers' compensation case, insurer initially denied claimant's claim for a knee injury but, before hearing, rescinded the denial. The Workers' Compensation Board subsequently issued an order on penalties and attorney fees. The board denied claimant's request to impose a penalty against insurer under ORS 656.262(11). The board also determined that claimant's attorney was not "instrumental" in obtaining rescission of the denial and, on that basis, did not award an attorney fee under ORS 656.386 (1)(a). On review, claimant challenges both aspects of the board's order. We conclude that the board erred in failing to address the reasonableness of insurer's investigation as part of its penalty analysis, so we reverse and remand on that issue, but we conclude that the board did not err in its application of the attorney fee statute.

## FACTS

We state the facts consistently with the board's unchallenged factual findings. *SAIF v. Durant*, 271 Or App 216, 218, 350 P3d 489, *rev den*, 358 Or 69 (2015).

In December 2014, claimant hit his right foot against a table leg at work and twisted his right knee. He did not immediately report the incident to employer or seek medical treatment.

In January 2015, about three weeks after the incident, claimant sought medical treatment. The doctor, Dales, diagnosed bilateral osteoarthritis. Dales recorded that claimant had a "several-week history of right knee pain, mostly at the medial aspect of the knee"; had "developed a clicking and pain to the medial aspect of the knee with bending or twisting of the knee"; was "starting to become limited with his activities of daily living"; and had had "no improvement with conservative treatment and time." Dales recorded nothing in his chart notes about the injury being work-related.

Two weeks later, Dales saw claimant again. Based on MRI results, Dales diagnosed claimant with a right knee medial meniscal tear and recommended surgery. According

to the chart notes, the MRI "showed a large tear of the posterior horn of the medial meniscus" and also "some generalized degenerative changes about the knee." Again, Dales did not indicate in the chart whether the condition was work-related.

In late January, about five weeks after the incident (and shortly after claimant saw Dales the second time), claimant and employer completed a Form 801, entitled "Report of Job Injury or Illness," in which claimant asserted a worker's compensation claim. On the form, claimant stated that the injury had occurred on December 23, 2014, at 1:00 p.m.; that he had worked from 8:00 a.m. to 2:30 p.m. that day; and that the affected body part was his right knee. In response to the question "What caused it? What were you doing?" claimant wrote, "Twisted knee by hitting inside of toe on table leg."

Insurer denied the claim five days after receiving it, apparently based on the Form 801 and Dales's chart notes from claimant's two visits. As the reason for the denial, insurer stated, "There is insufficient evidence to establish that [claimant] sustained a compensable injury arising out of and in the course of employment."

In mid-February, claimant requested a hearing to challenge the denial, and the hearing was set for May 18.

In March, insurer scheduled an independent medical examination (IME) and requested "initial and ongoing" discovery from claimant.

On April 2, claimant retained an attorney, who, on April 6, sent a letter to insurer, giving notice of his representation and requesting discovery.

On April 10, the IME took place. After examining claimant, Dr. Fellars opined that claimant had a work-related medial meniscus tear of the right knee, combined with pre-existing osteoarthritis, and that claimant's work injury had ceased to be the major contributing cause of his ongoing disability or need for treatment. (That is, Fellars indicated that claimant's work injury had once been, but had ceased to be, the major contributing cause of his ongoing disability or need for treatment.) Insurer received Fellars's report on

April 14. A week later, on April 23, insurer rescinded its denial and accepted a "right knee complex tear of the posterior horn of the medial meniscus combined with preexisting non-compensable right knee osteoarthritis."

On May 18, the parties appeared before an administrative law judge (ALJ) for the scheduled hearing. Because insurer had rescinded its denial, the only issues for the ALJ to decide were (1) whether to assess a penalty against insurer under ORS 656.262(11), and (2) whether to award an attorney fee to claimant's attorney under ORS 656.386 (1)(a). The ALJ found that insurer had a legitimate doubt as to its liability when it denied the claim and therefore was not subject to a penalty under ORS 656.262(11). As for the attorney fee, the ALJ awarded a fee to claimant's attorney in the amount of $3,000, on the basis that "insurer's actions placed claimant's attorney in the position of having to prepare for hearing" and that the attorney therefore "was instrumental in obtaining the rescission of the denial" and was entitled to a fee under ORS 656.386(1)(a).

Insurer appealed the attorney fee award to the board, and claimant cross-appealed on the penalty issue. Like the ALJ, the board found that insurer had had a legitimate doubt as to its liability on the claim and therefore did not order a penalty under ORS 656.262(11). The board differed from the ALJ on the fee issue, however, concluding that claimant's attorney had not been instrumental in achieving the rescission of the denial, as required to trigger a fee award under ORS 656.386(1)(a). In the board's view, the record was "devoid of any action taken by claimant's counsel that could have influenced the insurer, save the submission of a retainer agreement and notice of representation." While recognizing that "[s]uch limited action may be sufficient in some cases, depending on their specific facts," the board concluded that claimant's attorney was not entitled to a fee in this case, where insurer had ordered an IME *before* claimant retained an attorney, the IME "establish[ed] the compensability of the claim," and insurer's acceptance of the claim "coincided" with its receipt of the IME report.

Claimant now seeks judicial review of the board's order.

PENALTY UNDER ORS 656.262(11)

In his first assignment of error, claimant argues that the board erred in not assessing a penalty against insurer under ORS 656.262(11). Under ORS 656.262(11)(a), if an insurer "unreasonably delays or unreasonably refuses to pay compensation, attorney fees or costs, or unreasonably delays acceptance or denial of a claim," the insurer "shall be liable for an additional amount up to 25 percent of the amounts then due plus any attorney fees assessed under this section." Claimant argues that insurer did not reasonably investigate his claim before denying it and that, consequently, insurer's denial was unreasonable and the board should have imposed a penalty.

"Whether a denial or delay is unreasonable involves both legal and factual questions." *Brown v. Argonaut Insurance Company*, 93 Or App 588, 591, 763 P2d 408 (1988). Legally, the reasonableness of a denial turns on whether, when the insurer denied the claim, it "had a legitimate doubt as to its liability"—if so, the denial was reasonable, and, if not, it was unreasonable. *Id*. Underlying that legal question is a factual inquiry regarding the basis of the insurer's ostensible doubt, which requires the board to consider "all the evidence available to the insurer" at the time of the denial. *Snyder v. SAIF*, 287 Or App 361, 367, 402 P3d 743 (2017) (citation omitted). Considering that evidence, the board applies the above legal standard to determine whether the insurer's denial of the claim was based on a "legitimate" doubt as to its liability and therefore reasonable. We review for errors of law whether the board applied the correct legal standard, and we review the board's factual findings for substantial evidence. *Brown*, 93 Or App at 591; ORS 183.482 (8)(a), (c).

As a preliminary matter, we note that claimant's first assignment of error depends on a legal premise that the board itself articulated in its order and which insurer does not contest: that an insurer who fails to conduct a reasonable investigation of a claim cannot maintain a "legitimate" doubt as to its liability. In its order, the board included as part of its general statement of the applicable law that "[a] 'legitimate doubt' does not exist when the carrier denies a claim without

conducting a reasonable investigation." For that proposition, the board cited OAR 436-060-0140(1)[1] and two prior board decisions.[2] OAR 436-060-0140(1) provides, "The insurer is required to conduct a 'reasonable' investigation based on all available information in determining whether to deny a claim." "A reasonable investigation is whatever steps a reasonably prudent person with knowledge of the legal standards for determining compensability would take in a good faith effort to ascertain the facts underlying a claim, giving due consideration to the cost of the investigation and the likely value of the claim." OAR 436-060-0140(1)(a). Because no one challenges the underlying premise of claimant's argument, we accept it for purposes of our review.[3]

With that we turn to the issue that is disputed. Claimant argues that, although the board stated the law correctly, it failed to apply the law; that is, claimant argues that the board failed to determine whether insurer's investigation was reasonable before deciding whether insurer's denial of the claim was reasonable. Claimant therefore asks that we reverse and remand for a determination of the reasonableness of insurer's investigation, as relevant to the reasonableness of its claim denial. In response, insurer makes three arguments, each of which we address in turn and, ultimately, reject.

First, insurer argues that the issue presented in claimant's first assignment of error is unpreserved. We

---

[1] The current version of OAR 436-060-0140 is materially the same as the version that was in effect at the time of claimant's hearing, so we refer to the current version.

[2] *See James S. Hurlocker*, 66 Van Natta 1930, 1937 (2014) ("A 'legitimate doubt' does not exist when the carrier denies a claim without conducting a reasonable investigation."); *Kenneth A. Foster*, 44 Van Natta 148, 149, *aff'd without opinion*, 117 Or App 543 (1992) (finding that the insurer did not have a legitimate doubt about its liability where the insurer "did not contact claimant for a statement" or "seek a medical opinion from claimant's treating physician, the hospital emergency room, or its own in-house medical expert before denying the claim").

[3] On its face, OAR 436-060-0140(1) could be read, potentially, as relating only to civil penalties imposed on insurers by the Director of the Department of Consumer and Business Services or her designee. *See* OAR 436-060-0140(1)(b) ("In determining whether an investigation is reasonable, *the director* will \*\*\*." (Emphasis added.)); OAR 436-060-005 (defining "director"). However, the board apparently does not read it that narrowly, and insurer does not challenge the board's statement of the applicable law.

disagree. Claimant challenged the limited nature and duration of insurer's predenial investigation in both the ALJ proceeding and the board proceeding. Although claimant's argument could have been more finely honed, the purposes of preservation were served. *See Entrepreneurs Foundation v. Employment Dept.*, 267 Or App 425, 428, 340 P3d 768 (2014) (preservation requires a party's argument to be "specific enough to ensure that the agency is able to consider the point and avoid committing error" (citation omitted)).

    Second, insurer draws our attention to certain unchallenged facts on which the board relied in reaching its decision—that claimant delayed seeking medical treatment, that claimant delayed reporting the injury, and that Dales's medical records did not mention the circumstances or cause of claimant's injury. Insurer does not explain, however, nor did the board address, whether or why those delays and ambiguities made it unnecessary for insurer to conduct even a minimal investigation to determine, for example, whether the accident was work-related (if that was what insurer doubted). We express no opinion as to whether, under the circumstances here, it was reasonable for insurer to do only what it did before denying the claim. That is a question for the board in the first instance. But, if the board interprets OAR 436-060-0140(1) as requiring an insurer to conduct a reasonable investigation before denying a claim, as relevant to the insurer having a legitimate doubt as to its liability, then the board needs to determine whether insurer's investigation was reasonable under the circumstances as part of deciding whether the claim denial was unreasonable, at least in those cases such as this one in which the claimant challenges the reasonableness of the investigation.

    Lastly, insurer suggests briefly, without discussion, that the board implicitly determined that insurer's investigation (or lack thereof) was reasonable in this case. We disagree. As we read the board's order, the board did not make any determination on that issue but instead failed to consider it. In failing to consider the reasonableness of insurer's investigation as part of its analysis, the board committed legal error, based on its own statement of the applicable legal principles. We therefore reverse and

remand for the board to determine whether insurer's investigation was reasonable and, taking that determination into account, reconsider its ruling under ORS 656.262(11) as appropriate.

## ATTORNEY FEE UNDER ORS 656.386(1)(a)

Under ORS 656.386(1)(a), when an insurer denies a claim but then rescinds the denial before hearing—as occurred here—the claimant's attorney is entitled to a reasonable attorney fee if he or she was "instrumental" in obtaining the rescission. Specifically, the statute provides:

> "In all cases involving denied claims where a claimant finally prevails against the denial in an appeal to the Court of Appeals or petition for review to the Supreme Court, the court shall allow a reasonable attorney fee to the claimant's attorney. In such cases involving denied claims where the claimant prevails finally in a hearing before an Administrative Law Judge or in a review by the Workers' Compensation Board, then the Administrative Law Judge or board shall allow a reasonable attorney fee. *In such cases involving denied claims where an attorney is instrumental in obtaining a rescission of the denial prior to a decision by the Administrative Law Judge, a reasonable attorney fee shall be allowed.*"

ORS 656.386(1)(a) (emphasis added).

In his second assignment of error, claimant contends that the board erred in ruling that his attorney was not instrumental in obtaining the rescission in this case and therefore not entitled to a fee.

It is undisputed—based on the board's unchallenged factual findings—that the only action that claimant's attorney took before insurer rescinded its denial was to send a single letter to insurer. In that letter, claimant's attorney notified insurer that he was representing claimant and requested discovery. On those facts, and relying on a dictionary definition of "instrumental," the board determined that claimant's attorney was not instrumental in obtaining the rescission. The board expressed that such limited action could be enough to require a fee award in some circumstances, but, on this record, it was unpersuaded that claimant's attorney's involvement affected insurer's decision

in any way. Rather, the board viewed insurer's receipt of the IME results—from an IME scheduled *before* claimant retained an attorney—as the pivotal event. The board explained:

> "It is claimant's burden to prove that his attorney was 'instrumental' in obtaining rescission of the denial. *See* ORS 656.386(1); *Harris v. SAIF*, 292 Or 683, 690[, 642 P2d 1147] (1982) (burden of proof is on the proponent of a fact or position). 'Instrumental' is not defined by statute, but is otherwise defined as 'being an instrument that functions in the promotion of some end or purpose.' *Webster's Third New Int'l Dictionary* 1172 (unabridged ed 1993).

> "Claimant asserts that his counsel's representation influenced the insurer's decision to accept his claim following its receipt of Dr. Fellars's report and, as such, was 'instrumental' in obtaining the 'pre-hearing' rescission of the insurer's denial. However, the record does not support claimant's assertion.

> "The record is devoid of any action taken by claimant's counsel that could have influenced the insurer, save the submission of a retainer agreement and notice of representation. Such limited action may be sufficient in some cases, depending on their specific facts. In this particular case, however, an insurer-arranged medical examination had been ordered prior to the insurer's receipt of the retainer, and the issuance of the acceptance coincided with the insurer's receipt of that medical examiner's report establishing the compensability of the claim. Therefore, this particular record does not persuasively support a conclusion that claimant's counsel was 'instrumental' in obtaining the 'pre-hearing' rescission of the insurer's denial.

> "Consequently, we conclude that an attorney fee award under ORS 656.386(1)(a) is not warranted."

(Footnotes omitted.)[4]

---

[4] After stating its conclusion, the board went on to explain why it viewed this case as distinguishable from others in which it *had* considered a claimant's attorney to be instrumental in obtaining rescission of a denial. In particular, the board stated that this case is unlike *Richard A. Staley*, 66 Van Natta 1993, 1996 (2014), because "counsel in this case had not submitted additional claims on his client's behalf," and unlike *Peggy L. Segur*, 62 Van Natta 1406, 1407 (2010), because in this case "the insurer had arranged for a medical examination before claimant was represented by counsel."

On review, claimant argues that the board misconstrued the term "instrumental" and, as a result, set too high a bar for his attorney to obtain compensation. In claimant's view, being "instrumental" in obtaining a prehearing rescission does not require any causal relationship between claimant's attorney's actions and insurer's decision to rescind the denial. Rather, in claimant's view, "agreeing to represent the worker in the litigation, entering an appearance, and performing necessary work to further that litigation to its end" is all that is necessary for the attorney to be "instrumental" in obtaining the rescission.

Because the meaning of "instrumental" in ORS 656.386(1)(a) is a question of statutory construction, we "apply our familiar interpretive methodology, examining the statute's text, context, and relevant legislative history, as well as any applicable maxims of statutory construction, to determine the legislature's intent." *State v. Clemente-Perez*, 357 Or 745, 753, 359 P3d 232 (2015). We begin with the text, as "there is no more persuasive evidence of the intent of the legislature." *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009).

When the legislature has not defined a term, we typically assume that the term is intended to have its "plain, natural, and ordinary meaning." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). The word "instrumental," in the sense used in ORS 656.386 (1)(a), is commonly defined to mean "serving as a means or intermediary determining or leading to a particular result" *or* "being an instrument that functions in the promotion of some end or purpose." *Webster's Third New Int'l Dictionary* 1172 (unabridged ed 1993) (using symbolic colon between those two definitions); *see also id*. at 17a (a symbolic colon indicates two or more definitions for a single sense of a word).[5] The first definition—"serving as a means or intermediary determining or leading to a particular result"—indicates a strong causative relationship between

---

[5] Because the word "instrumental" was added to the statute in 1991, the board cited the 1993 edition of *Webster's Third New International Dictionary* in its order, and we do the same. *See Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296 n 7, 337 P3d 768 (2014) (regarding use of contemporaneous dictionaries).

the instrument (the attorney) and the result (rescission of the denial). The second definition—"being an instrument that functions in the promotion of some end or purpose"—appears to be less dependent on a causative relationship and to require only that the instrument (the attorney) work toward the end (rescission of the denial).

With those common definitions of "instrumental" in mind, we next consider statutory context and legislative history, which, as relevant here, are closely related.

Prior to 1991, ORS 656.386(1) allowed for an attorney fee award to the claimant's attorney only if the claimant prevailed in a referee hearing, on board review, or on appeal or review. ORS 656.386(1) (1989). Nonetheless, there was "a long-standing Board practice of allowing attorney fees where a denial [was] rescinded before hearing." *Duane L. Jones*, 42 Van Natta 875, 875 (1990). That practice was reflected in a board rule, OAR 438-15-030(1) (1990), which provided, "If an attorney is instrumental in obtaining compensation for a claimant without a hearing before a referee, a reasonable attorney fee may be approved or assessed."

In 1991, the board struck down OAR 438-15-030(1) (1990) as exceeding the board's statutory authority. *Jones*, 42 Van Natta at 878-79. The board indicated that it was compelled to that result by the statutory language but noted that the legislature could always amend the statute. *Id.* at 879. In a concurring opinion, Board Member Brittingham suggested more forcefully that the legislature should amend the statute, concluding, "As the majority points out ***, an inequity to the worker may have been wrought by today's decision. If this inequity is to be corrected, then the legislature must construct a mechanism to allow an attorney who actively participates in pre-hearing negotiations to be adequately compensated from resources other than those of claimant." *Id.* (Brittingham, specially concurring) (internal quotation marks omitted).

The legislature acted immediately. Senate Bill (SB) 540 was introduced "to expressly provide for an award of attorney fees in circumstances where an attorney obtains compensation for a claimant before the claim has proceeded to a hearing." *Bowman v. SAIF Corp.*, 278 Or App 417,

424, 374 P3d 1008 (2016). SB 540 proponents argued that it was "fundamentally unfair to deny attorney fees based upon an 'arbitrary' temporal distinction" between pre- and post-hearing claim resolutions. *Id.* They sought to "overrule" *Jones*, *id.*, and to "reinstate the pre-*Jones* status quo," Testimony, Senate Committee on Labor, SB 540, Mar 20, 1991, Ex F (statement of Oregon State Industrial Union Counsel/AFL-CIO representative Diane Rosenbaum).[6] As described by Representative Kevin Mannix, SB 540 would effect a "return" to the board's practice of awarding attorney fees when, with or without a hearing, a claimant's attorney "succeeded in convincing the insurance company that the claim was good." Minutes, House Committee on Labor, SB 540, May 29, 1991.[7] SB 540 was signed into law in June 1991, resulting in a statute materially identical to the current version.[8]

It is apparent from the legislative history that, when ORS 656.386(1) was amended in 1991, the legislature intended to overrule *Jones* and reinstate the pre-*Jones* status quo. It is less obvious what the legislature understood the pre-*Jones* status quo to have been, as far as the practical application of the "instrumental" standard. No one directly addressed the meaning of "instrumental" in legislative hearings or testimony. In general, the legislative history suggests that the legislature was concerned primarily, if not exclusively, with addressing the bigger policy issue—making attorney fees *available* for claims resolved before hearing—not the specifics of who would qualify for a fee.

Nonetheless, the legislative history does provide some insight into what the legislature understood "instrumental" to mean. First, several SB 540 proponents cited the

_____

[6] When the legislature took up the issue, the Court of Appeals had recently affirmed the board's order. *See Jones v. OSCI*, 107 Or App 78, 810 P2d 1318 (1991). The Court of Appeals later withdrew its opinion as a result of the legislative action. *See Jones v. OSCI*, 108 Or App 230, 232, 814 P2d 558 (1991).

[7] We cite the minutes because the official audio tape recording of the hearing is currently not available at the State Archives.

[8] *See* ORS 656.386(1) (1991) (providing that, if "an attorney is instrumental in obtaining compensation for a claimant and a hearing by the referee is not held, a reasonable attorney fee shall be allowed"). After the 1991 amendment to the statute, the board also reinstated OAR 438-15-030(1).

concurring opinion in *Jones*.[9] That is significant because the concurrence urged the legislature to "correct" the potential "inequity" of *Jones* by amending the statute "to allow an attorney who actively participates in pre-hearing negotiations" to receive compensation. *Jones*, 42 Van Natta at 879 (Brittingham, specially concurring). Second, Representative Mannix described SB 540 as effecting a "return" to the board's practice of awarding fees to attorneys who, with or without a hearing, "succeeded in convincing the insurance company that the claim was good." Minutes, House Committee on Labor, SB 540, May 29, 1991. Both of those statements envision an attorney with a relatively strong causative role in the rescission of a denial.

At the same time, the board's order in *Jones*, which spurred the legislative action, cited two prior board orders as examples of past practice—*Clarence A. Hooper*, 1 Van Natta 160 (1968) and *Edward M. Anheluk*, 34 Van Natta 205 (1982)—and in both of those cases the board seems to have applied a relatively low bar for "instrumental." *See Jones*, 42 Van Natta 875 (citing *Hooper* and *Anheluk* without discussion). Any legislators who obtained and read *Hooper* and *Anheluk* likely would have understood the board to view some attorneys as "instrumental" in less direct ways than those expressly referenced by Board Member Brittingham and Representative Mannix. That said, *Anheluk* and *Hooper* appear to have been decided on their facts—even if those facts are not readily apparent from the short published orders—and do not clearly state a general board policy of awarding an attorney fee in every case of prehearing rescission of a claim denial.

Given the text, context, and legislative history of ORS 656.386(1)(a), it is an open question whether the 1991 legislature intended "instrumental" in the more directly

---

[9] *See* Tape Recording, House Committee on Labor, SB 540, May 27, 1991, Tape 148, Side B (statement of Oregon State Industrial Union Council/AFL-CIO representative Diane Rosenbaum); Tape Recording, Senate Committee on Labor, SB 540, Mar 20, 1991, Tape 40, Side A (statement of Oregon Workers' Compensation Attorneys representative Chris Moore); Tape Recording, Senate Committee on Labor, SB 540, Mar 20, 1991, Tape 40, Side A (statement of Association of Oregon Industries representative Karl Frederick); Tape Recording, Senate Committee on Labor, SB 540, Mar 20, 1991, Tape 40, Side A (statement of Oregon State Industrial Union Council/AFL-CIO representative Diane Rosenbaum).

causative sense of "serving as a means or intermediary determining or leading to a particular result" or in the less directly causative sense of "being an instrument that functions in the promotion of some end or purpose."[10] We need not resolve that question today, however, because, in either event, the board did not err in this case.

On the facts found by the board, claimant's attorney was not "instrumental" under the first, narrower definition of that term. As for the second, broader definition—the definition on which the board relied—it may not require as much as the first definition in terms of causation, but we agree with the board that it does require *something*.[11] That is, we reject claimant's view that, when an attorney appears in a worker's compensation matter and the insurer subsequently rescinds a claim denial, the attorney is necessarily "instrumental" in obtaining the rescission and is automatically entitled to a fee.

The statute as enacted plainly sets a different standard for an attorney fee award before hearing—requiring the attorney to have been "instrumental" in obtaining the result—than it does for an attorney fee award after hearing—placing no such limitation and providing for a fee in every case in which the claimant finally prevails before the ALJ

---

[10] Although the parties did not raise the issue, we have considered whether the legislature might have intended "instrumental" as a delegative term, rather than an inexact term, and conclude that it did not. *See DCBS v. Muliro*, 359 Or 736, 742, 380 P3d 270 (2016) ("Whether legislation is exact, inexact, or delegative is itself a question of statutory construction ***."); *OR-OSHA v. CBI Services, Inc.*, 356 Or 577, 590, 341 P3d 701 (2014) (identifying four relevant considerations in deciding whether the legislature intended a term to be delegative). An "inexact" term is "open to different interpretations" but is ultimately a "complete expression of legislative intent," whereas a "delegative" term is "non-completed legislation which the agency is given delegated authority to complete." *Springfield Education Assn. v. School Dist.*, 290 Or 217, 224-25, 228, 621 P2d 547 (1980). In this case, we believe the legislature intended "instrumental" as a "complete expression of legislative intent," even if the term is susceptible to different interpretations. *Id*. at 224. That is, we understand the legislature to have intended the board to apply that term consistently with the legislature's understanding of it, not to complete "non-completed legislation." *Id.* at 228.

[11] Consistent with its reliance on the second definition of "instrumental," the board denied a fee not because claimant failed to prove that his attorney did something that directly led to the rescission but because claimant failed to prove that his attorney did anything that had *any effect whatsoever* on insurer's decision to rescind the denial.

(previously a referee), the board, or the court. *See* ORS 656.386(1)(a); ORS 656.386 (1991).[12] Ignoring that distinction and treating the statute as creating a blanket entitlement to a fee would be inconsistent with the statutory text and context, under either common definition of "instrumental," and would effectively deprive "instrumental" of any meaning as a condition for an attorney fee award. *See* Tape Recording, Senate Committee on Labor, SB 540, Mar 20, 1991, Tape 40, Side A (statement of Association of Oregon Industries representative Karl Frederick) ("The bill provides *** as long as the attorney is 'instrumental,' *with instrumental being the key word here*, in obtaining compensation for the claimant, then that person should be entitled to attorney fees." (Emphasis added.)); *Bowman*, 278 Or App at 424 (describing the purpose of the 1991 amendment as being "to expressly provide for an award of attorney fees in circumstances where an attorney *obtains compensation for a claimant* before the claim has proceeded to a hearing" (emphasis added)).[13]

The legislature is free to amend ORS 656.386(1)(a) to provide for an attorney fee in every case of prehearing rescission of a claim denial, and there may be a persuasive policy argument for such an amendment. However, that is not how the statute is currently written. The 1991 legislature chose to limit prehearing attorney fee awards to

---

[12] *Cf.* ORS 656.308(2)(d) (providing for a reasonable attorney fee to be awarded to an injured worker's attorney "for the attorney's appearance and active and meaningful participation in finally prevailing against a responsibility denial").

[13] The dissent mischaracterizes our decision as concluding that "the legislature envision[ed] an attorney with a relatively strong causative role in the rescission of a denial" and as "quickly skirt[ing] over" *Anheluk* and *Hooper*. 300 Or App at 378 (Egan, C. J., dissenting). Neither is correct. We expressly state no opinion as to which of the two common definitions of "instrumental" the legislature intended, because the parties have not briefed that issue and the difference does not affect the result in this case. *See id.* at 374-75. And we simply disagree with the dissent that *Anheluk* and *Hooper* are unequivocal about the board's past policy. *See id.* at 375 n 10. Further, we disagree with the dissent's suggestion that the statute should be read as entitling the claimant's attorney to a fee in every case of prehearing rescission of a claim denial but limiting the award to the amount directly related to the rescission—even if zero. *See* 300 Or App at 381 (Egan, C. J., dissenting). Such an approach would be very unusual and, in our view, simultaneously takes too broad a view of the entitlement and too narrow a view of what may be awarded when the entitlement exists.

situations in which a claimant's attorney is "instrumental" in obtaining the rescission of a claim denial. That limitation is in stark contrast to the rest of the statutory provision, which expressly provides for an attorney fee in *every* case involving a denied claim where the claimant finally prevails in a hearing, on board review, or on judicial review. We cannot ignore that distinction, or the legislative intent reflected therein. Accordingly, we affirm the board's order as to the attorney fee.

Reversed and remanded.

**EGAN, C. J.,** concurring in part and dissenting in part.

I concur with the majority that the board committed legal error in failing to consider the reasonableness of the insurer's investigation as part of its analysis, and I agree that the proper outcome is to reverse and remand on that issue. However, I disagree with the majority's construction of the attorney fee provision under ORS 656.386(1). As explained below, I would hold that when a claimant's attorney engages in work for a claimant that culminates in an insurer rescinding a previous denial, the attorney was "instrumental" for purposes of ORS 656.386(1) and is thus eligible for a fee award. Therefore, I dissent from the majority's holding and analysis on that issue. I would reverse and remand for the board to consider, under the correct legal standard, what reasonable attorney fee is appropriate to compensate claimant's attorney for the work he did leading up to the insurer's rescission of its initial denial.

Like the majority, I would approach the undefined statutory term "instrumental" with "our familiar interpretive methodology." I would begin with dictionary definitions and proceed to examine the statutory context and legislative history. *See* 300 Or App at 371-72. I would track the majority closely through these steps, and I would reach the exact same conclusion: When the legislature amended ORS 656.386(1), it intended to "overrule" *Duane L. Jones*, 42 Van Natta 875 (1990) and "reinstate the pre-*Jones* status quo."

300 Or App at 372-73. At this juncture, however, in my view, the majority's analysis goes off track.

The majority expresses concern that (1) no one "directly" addressed the meaning of the term "instrumental," and (2) it is unclear what the legislature understood the "pre-*Jones* status quo" to have been. Nonetheless, the majority discerns that the legislature "envision[ed] an attorney with a relatively strong causative role in the rescission of a denial." The majority quickly skirts over two cases that *Jones* itself cited as evidence of the pre-*Jones* status quo, and ignores the role that the attorney fee provision in ORS 656.386(1) plays in the workers' compensation scheme as a whole. In doing so, the majority is able to conclude that the legislature's use of the word "instrumental" means that, in order to obtain fees under ORS 656.386(1), a claimant's attorney must have caused—*i.e.*, subjectively influenced—the insurer to rescind a claim denial. *See* 300 Or App at 374-75. In my view, though it is true that no one "directly" addressed the meaning of the term "instrumental," it *is* clear what the legislature understood the pre-*Jones* status quo to have been. That understanding is supported by the context of the legislative history and the workers' compensation scheme as a whole.

The pre-*Jones* status quo can be discerned from the board's underlying order in *Jones* itself. Indeed, in its order, the board acknowledged that the insurer in that case was "challenging a long-standing Board practice of allowing attorney fees where a denial is rescinded before hearing," and cited its prior decisions in *Clarence A. Hooper*, 1 Van Natta 160 (1968) and *Edward M. Anheluk*, 34 Van Natta 205 (1982). *Jones*, 42 Van Natta 875. In *Hooper*, one of the questions was "whether the claimant's attorney [was] entitled to payment of his fees" after the insurer had unilaterally accepted a claim which was previously denied. 1 Van Natta at 160. The board concluded that, pursuant to ORS 656.386, a fee was appropriate because "without explanation, it would be difficult to conclude *other* than that the claim was accepted as a result" of the insurer's knowledge that the claimant and his attorney were preparing for a hearing to contest the denial. *Id.* (emphasis added).

In *Anheluk*, the insurer had reversed a prior denial after the claimant's attorney requested a hearing. The board went further in *Anheluk* than it had in *Hooper* and explained that, unlike attorney fees for unreasonable claims processing which *may* be awarded, attorney fees under ORS 656.386(1) "*must* be awarded when the claimant prevails on a denied claim." 34 Van Natta 205. The board had "no doubt about the authority of an insurer to reverse itself" on a denial. *Id.* When an insurer does reverse itself, however, the board explained that "it is a safe bet that the request for hearing *and other efforts of the claimant's attorney* were instrumental in obtaining the ultimate result of claim acceptance." *Id.* Thus, the board concluded that *Anheluk* presented the "kind of situation" in which the claimant's attorney was entitled to a fee amount that would reflect the amount of work the attorney had done. *Id.*

Both *Anheluk* and *Hooper* rest explicitly on an understanding that, to be "instrumental" for purposes of a fee award, an attorney need not demonstrate that their work in representing a client directly *caused* an insurer to reverse a prior denial. The focus, rather, is on the timeline. If an insurer reversed a denied claim *after* the claimant's attorney began to do work to challenge the denial, the board was willing to assume that the attorney's presence had some impact on the insurer's decision.

That understanding of the pre-*Jones* status quo is underscored by the legislative history of Senate Bill (SB) 540 (1991), the bill that sought to reinstate the status quo. Again, the majority is technically correct that no legislator explicitly stated what the term "instrumental" was supposed to mean. The history is replete, however, with explanation of the overall goal of the bill. That explanation sheds light on the term.

As we explained in *Bowman v. SAIF Corp.*, 278 Or App 417, 374 P3d 1008 (2016), SB 540 was presented with broad support because it was "the right policy choice for the workers' compensation system as a whole" and because it would correct the unfairness in cutting a claimant's attorney's right to compensation off "arbitrarily." 278 Or App at 424. Christopher Moore, a claimants' attorney who testified

on behalf of the Oregon Trial Lawyers Association and the Oregon Workers' Compensation Attorneys, explained:

> "Attorneys representing injured workers in this system need to be compensated so that injured workers can be adequately represented. If the attorneys representing injured workers are not compensated for the work that they do, then skilled competent counsel will choose not to represent injured workers, and we believe that is at cross-purposes with the underlying motives of the Oregon Workers' Compensation Act."

Testimony, Senate Committee on Labor, SB 540, Mar 20, 1991, Ex E (statement of Christopher Moore). Moore's "belief" was echoed by Representative Kevin Mannix, an attorney who represented insurance carriers in his practice. Mannix emphasized that SB 540 was about "fairness." Moreover, Moore's understanding of the motives behind the Workers' Compensation Law is grounded in the policy declared in the law itself. Indeed, one of the stated objectives is

> "[t]o provide a fair and just administrative system for delivery of medical and financial benefits to injured workers that reduces litigation and eliminates the adversary nature of the compensation proceedings, to the greatest extent practicable, *while providing for access to adequate representation for injured workers*[.]"

ORS 656.012(2)(b) (emphasis added).

In my view, it is clear that the legislators who put forth SB 540 intended to provide workers with access to competent counsel *at all stages of representation*. That includes access to counsel when an insurer issues a denial to a claim. A claimant's access to an attorney in that circumstance depends, inherently, on the attorney's potential ability to be compensated for the work they do. The majority rejects claimant's view that an attorney is necessarily "instrumental" when an insurer rescinds a denial after a claimant retains an attorney, opining that such a "blanket entitlement" to fees is unwarranted by any understanding of the term. 300 Or App at 375-76. By focusing on the attorney's "entitlement" to a fee, the majority ignores the broader picture: that "entitlement" really belongs to the worker, and the entitlement is access to counsel, not to a fee.

The majority's statutory analysis ends with a narrow focus on the "causative" relationship between the attorney's work and the insurer's ultimate decision. That focus, while perhaps more true to one dictionary definition of "instrumental," also causes the majority to ignore both the history of workers' compensation practice, as well as the broader policy goal of putting injured workers on equal footing with their employers. As explained above, historically, the board was comfortable making the "safe bet" that an attorney's presence had something to do with an insurer reversing a denial. Thus, focusing on whether an attorney caused—or subjectively influenced—an insurer to rescind a denial is not, in my view, what the legislature intended by providing for fees for attorneys who are "instrumental in obtaining a rescission." Rather, the legislature intended to provide compensation for attorneys who represent claimants on denied claims and succeed in obtaining a reversal of the denial. The majority's causative analysis is an extra step that is not required under the statute. It is also superfluous. After all, a claimant's attorney's fees will always be limited to "reasonable" fees that were spent on "pertinent, litigation-related issues." *Bowman*, 278 Or App at 426. If the attorney's work had nothing to do with the denial being rescinded, it seems highly unlikely that such work would be "pertinent" or "litigation-related."

For the reasons identified above, I respectfully dissent.